THE PEOPLE v. PATRICK SWEETMAN.

Under the act of congress, the county courts of the several counties of the State of New-York have jurisdiction of the naturalization of aliens. *Per* BACON, J.

State courts, in entertaining jurisdiction of cases of naturalization, act exclusively under the laws of the United States, and should be deemed, *quoad hoc*, courts of the United States.

Willful false swearing, by a person giving material testimony in a naturalization proceeding, before a county court, is an offence against the laws of the United States, and punishable in the United States courts and not in the state courts.

Application for naturalization must be made in open court, and evidence of residence, &c., must be taken by the oral examination of witnesses and not by previously prepared affidavits. *Per* PRATT, J.

The question of jurisdiction of certain offences, as between the courts of the United States and the state courts, discussed by PRATT, J.

Form of an indictment for perjury, alleged to have been committed in a proceeding to obtain the naturalization of an alien, in a county court.

CERTIORARI to the Court of Oyer and Terminer of the county of Lewis.

The prisoner had been indicted for perjury, alleged to have been committed in the County Court of Lewis county

on the naturalization of James Catillay. The indictment was as follows:

*Lewis County, ss:*

The jurors of the people of the State of New-York, in and for the body of the county of Lewis, to wit: (reciting the names of the jurors), good and lawful men of the said county of Lewis, then and there being sworn and charged to inquire for the people of the State of New-York, and for the body of the county of Lewis, do upon their oath present: That heretofore, to wit, on the twenty-seventh day of September, in the year of our Lord one thousand eight hundred and fifty-three, at a County Court of the said county of Lewis, holden at the court-house in Martinsburgh, in and for said county of Lewis, by and before the Honorable Francis Seger, then county judge of said county of Lewis and judge of said court, one James Catillay, who was then and there an alien and subject of the government of Germany, and not a citizen of the United States, made application to said court, and made and filed and presented his declaration in writing, and on oath in open court, of his intention to become a citizen of the United States in due form of law, and said County Court had full and perfect jurisdiction and authority over the subject matter of said application, and that the said James Catillay did then and there apply to and petition said court to be naturalized and to become a citizen of the United States, and that at the said County Court last aforesaid, which was a court of record, to wit, on the twenty-seventh day of September aforesaid, on said petition and application, it then and there became and was a material question whether the said James Catillay had then and there resided within the limits and under the jurisdiction of the United States for five years then last past, and whether the said James Catillay, for one year then last past, had resided within the State of New-York, and whether, during the same period, the said James Catil-

lay had behaved himself as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same, and whether at the time the said James Catillay arrived in the United States, he had attained his eighteenth year; and the jurors aforesaid, upon their oath aforesaid, do further present, that Patrick Sweetman, late of the town of Croghan, heretofore, to wit, on the said twenty-seventh day of September, in the year of our Lord one thousand eight hundred and fifty-three, to wit, at said County Court, to wit, at Martinsburgh, in said county of Lewis, wickedly, maliciously, unlawfully and feloniously contriving and intending unjustly, fraudulently, feloniously and unlawfully to procure the naturalization of the said James Catillay, an alien as aforesaid, and to procure his admission as a citizen of the United States, came in his proper person before the said County Court, to wit, before the said Francis Seger, county judge as aforesaid, and then and there in open court produced a certain affidavit, in writing, of him, the said Patrick Sweetman, and then and there in open court, before Harrison Barnes, who was then and there county clerk of said county of Lewis, and clerk of said County Court, in due form of law was sworn and took his corporal oath upon the Holy Gospel of God, concerning the truth of the matter contained in the said affidavit, he the said Harrison Barnes, clerk as aforesaid, then and there having lawful and competent power and authority to administer the said oath to the said Patrick Sweetman in that behalf, and that the said Patrick Sweetman being so sworn as aforesaid, not having the fear of God before his eyes, but being moved and seduced by the instigation of the devil, then and there in open court, upon his oath aforesaid before the said Harrison Barnes, clerk as aforesaid, the said Harrison Barnes then and there having lawful and competent power and authority to administer the said oath to the said Patrick Sweetman in that behalf, falsely, corruptly,

The People *v.* Sweetman.

knowingly, willfully and maliciously, in and by his said affidavit in writing, did depose and swear, among other things, in substance and to the effect following, that is to say : that James Catillay, meaning the said James Catillay above mentioned, had resided within the limits and under the jurisdiction of the United States for five years then last past, and for one year then last past within the State of New-York, and that during the same period he had behaved himself as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same ; and that at the time the said James Catillay arrived in the United States, he had not attained his eighteenth year, as in and by the said affidavit of the said Patrick Sweetman, filed in the county clerk's office of the said county of Lewis, more fully and at large appears, which affidavit is in the words and figures following, that is to say :

*State of New-York, Lewis County, ss:*

*Patrick Sweetman,* of said county, being duly sworn, doth depose and say : That he is a citizen of the United States; that he is well acquainted with the above named James Catillay ; and that the said James Catillay has resided within the limits and under the jurisdiction of the United States for five years last past, and for one year last past within the State of New-York ; and that during the same period he has behaved himself as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same. And he further saith, that at the time the said James Catillay arrived in the United States he had not attained his eighteenth year.

PATRICK SWEETMAN.

Sworn in open court, the 27th day }
   September, 1853, before me. }

H. BARNES, *Clerk.*

PAR. — VOL. III.          46

Whereas, in truth and in fact, the said James Catillay, at the time the said Patrick Sweetman took his said oath and made his affidavit aforesaid, had no residence within the limits and under the jurisdiction of the United States for five years then last past, and for one year last past within the State of New-York; and whereas, in truth and in fact, the said James Catillay, during the same period, had not behaved himself as a man of good moral character, attached to the principles of the constitution of the United States, and well disposed to the good order and happiness of the same; and whereas, at the time the said James Catillay arrived in the United States he had attained his eighteenth year; and whereas, the same affidavit was in all respects utterly false and untrue at the time the said Patrick Sweetman so made and swore to the same; and whereas, the said Patrick Sweetman, at the time he so swore to and made the same, well knew the same to be utterly false and untrue; and so the jurors aforesaid, upon their oath aforesaid, do say, that the said Patrick Sweetman, on the twenty-seventh day of September, in the year last aforesaid, to wit, at Martinsburgh, in the county aforesaid, at the said County Court aforesaid, in open court, which had full and competent jurisdiction over the subject matter of said application, before the said Harrison Barnes, clerk of said county and court as aforesaid (the said Harrison Barnes, clerk as aforesaid, then and there having such power and authority as aforesaid), by his own act and consent, and of his own most wicked and corrupt mind, in manner and form aforesaid, falsely, wickedly, willfully and corruptly, did commit willful and corrupt perjury, to the great displeasure of Almighty God, in contempt of the people of the State of New-York, and their laws, to the evil and pernicious example of all others in like case offending, and against the peace of the people of the State of New-York and their dignity.

E. S. MERRILL,
*District Attorney.*

The defendant pleaded not guilty, and was tried at a Court of Oyer and Terminer, held in Lewis county on the 18th and 19th days of December, 1856, before William J. Bacon, justice of the Supreme Court, and the justices of the Sessions. The defendant, by his counsel, moved to quash the indictment on the ground "That the County Court, being a court of limited and not having common law jurisdiction, had no power to grant certificates of citizenship or naturalization to aliens, and the affidavit set forth in said indictment was extra-judicial," which motion the said court denied, and the defendant's counsel excepted. A jury was then impanneled, and the prosecution, to sustain the indictment, called as a witness

*James Catillay,* who testified: I was born in Switzerland; I came to this country in June, 1853; landed in New-York May 25th, 1853; I arrived in Croghan. in Lewis county, June 4th, 1853; I know the defendant; he lives in Croghan; I became acquainted with him soon after I arrived there; we lived a short distance apart; I signed the paper shown me in three places and swore to it in this court room here; the defendant also signed it and swore to it here in this court room in my presence; Harrison Barnes swore defendant and myself to the affidavit.

The following is a copy of the paper referred to by the witness:

I, James Catillay, do declare on oath, that it is *bona fide* my intention, and has been for the last three years, to become a citizen of the United States, and to renounce forever all allegiance to all and every foreign prince, potentate, state or sovereignty whatever, and particularly to the government of Germany.

JAMES CATILLAY.

Sworn in open court this 27th day of September, 1853, before me.

H. BARNES, *Clerk.*

In the matter of James Catillay, on his naturalization:

*State of New-York, Lewis County, ss:*

*James Catillay,* being duly sworn, says: That for the continued term of five years last past, he has resided within the United States, without being at any time during the said five years, out of the territory of the United States, and that for one year last past he has resided within the State of New-York, and that at the time he so arrived in the United States he had not attained his eighteenth year.

JAMES CATILLAY.

Sworn in open court this 27th day ⎫
  of September, 1853, before me.  ⎭

H. BARNES, *Clerk.*

I, James Catillay, do solemnly swear that I will support the constitution of the United States, and that I do absolutely and entirely renounce and abjure all allegiance and fidelity to any foreign prince, potentate, state or sovereignty whatever, and particularly to the government of Germany, of which I was a subject.

JAMES CATILLAY.

Sworn in open court this 27th day ⎫
  of September, 1853, before me.  ⎭

H. BARNES, *Clerk.*

*State of New-York, Lewis County, ss:*

Patrick Sweetman, of said county, being duly sworn, doth depose and say: That he is a citizen of the United States; that he is well acquainted with the above named James Catillay, and that he, the said James Catillay, has resided within the limits and under the jurisdiction of the United States for five years last past, and for one year last past within the State of New-York, and that during the same period he has behaved himself as a man of good moral character, attached to the principles of the constitution of

the United States, and well disposed to the good order and happiness of the same; and he further saith that at the time the said James Catillay arrived in the United States he had not attained his eighteenth year.

PATRICK SWEETMAN.

Sworn in open court this 27th day }
of September, 1853, before me. }

H. BARNES, *Clerk.*

*Joseph Catillay* was then called as a witness, who, being duly sworn, testified: I am a brother of James Catillay, and came to this country with James; we landed in New-York May 25, 1853; I arrived in Croghan, June 4th, 1853; am now a resident of Croghan, and know the defendant.

*W. Hudson Stephens* was then called as a witness, who, being duly sworn, testified: I know Harrison Barnes; during the year 1853 he was the acting clerk in and for the county of Lewis; the signatures in the foregoing paper, "H. Barnes," are his; I know his handwriting.

*Sidney Sylvester* was then called as a witness, who, being duly sworn, testified: I am the clerk of the county of Lewis; I hold the book of minutes of the Lewis County Court; it shows a term of the Lewis County Court and Court of Sessions, September 27th, 1853; present Hon. Francis Seger, county judge, James R. Northrup and John Chickering, Esqrs., justices of sessions. The affidavits mentioned by the witness James Catillay I found on the files in my office.

It further appeared in the evidence that the county judge was sitting upon the bench, and engaged in his official duties at the time of the making and swearing to the paper mentioned in the testimony of James Catillay, in same room.

The affidavits were offered in evidence by the district attorney.

The defendant's counsel objected to their receipt on the ground "they were incompetent," and further that no foundation had been laid for their introduction, which objection

was overruled by the court, and the defendant's counsel excepted.

The affidavits were then read in evidence. At the close of the evidence on the part of the prosecution, the defendant's counsel moved that the defendant be discharged on the following grounds:

First. That it appears that the affidavit of the defendant, if made at all, was made in the Lewis County Court, for the purpose of procuring the said James Catillay to be naturalized, and to receive a certificate of citizenship from said court; that said court had no jurisdiction in the premises, and the pretended affidavit was therefore extra-judicial.

Second. It does not appear from such affidavits that they were made in proceedings in the Lewis County Court.

Third. That it does not appear that the person of the alien, mentioned in said indictments and in said affidavits, were one and the same: which motion was denied by the court, to which decision the defendant's counsel excepted.

After the close of the trial the defendant's counsel requested the court to charge that the clerk had no jurisdiction to naturalize, and that if the jury find that he assumed to entertain and act upon applications, and that of the said Catillay in particular, on the general authority of the court to act in court or out, that the affidavit in this case produced in evidence was extra-judicial.

The court, upon said request, charged that the clerk had no jurisdiction to naturalize, and that if the affidavit was in fact taken out of court, the oath was extra-judicial, and declined to charge otherwise on the remainder of the proposition.

The court further charged that, in order to sustain the allegation of perjury in this case, it was not necessary that the affidavit of the defendant should be submitted to the actual inspection of the court, but that the indictment was sustained if the jury should find that the oath was actually taken in the presence of the court, and while it was in open

The People *v.* Sweetman.

session, but if it was necessary to give effect to the oath, it would be presumed, in the absence of any proof to the contrary, that the court discharged its legal duty; to which ruling, and each and every part thereof, the counsel for defendant excepted. The jury rendered a verdict of guilty.

*John Clarke*, for the defendant.

I. The alleged perjury is not an offence against the laws of New-York, but only against those of the United States; by which the terms are prescribed on which a foreigner may become a citizen, not of the State of New-York, but of the United States. (*Dred Scott case.*) These terms are, that certain facts shall exist, and be proved before a Superior, or Circuit or District Court of a state, or Circuit or District Court of the United States; and by another section it is provided that " every Court of Record in any individual state, having common law jurisdiction, and a seal and clerk or prothonotary, shall be considered as a District⋅ Court within the meaning of the act, and every alien who may have been naturalized in any such court shall enjoy the same rights and privileges as if he had been naturalized in a District or Circuit Court of the United States." (*Act April* 14, 1803.) It is a law of the United States against which the offence is committed; it is committed in a court of the United States, made so by the act itself, having no authority except as such court. Hence, there can be no perjury in the case punishable by the state laws. Jurisdiction, even in the state court, in such case, is denied. (1 *Wheat.*, 330; *The United States* v. *Lathrop*, 17 *John.*, 4.) In these cases the court deny the authority of the state court to act at all under such delegated power; and in *ex parte Smith* (5 *Cow.*, 273), sustain only the powers of a magistrate to arrest and hold for examination, on the principle of national comity. These cases decided that, under the United States constitution, congress cannot vest any portion of the

judicial power of the United States except in courts ordained and established by itself. (*Dudley* v. *Mayhew*, 3 *Comst.*, 15.) State courts cannot take cognizance of a perjury committed in making an affidavit under an act of congress relative to the sale of public lands. (*The State* v. *Adams*, 4 *Bl. Com.*, 146; 5 *U. S. Dig.*, 250.) No state can pass naturalization laws. (*Chirac* v. *Chirac*, 2 *Wheat.*, 259.) The false oath must be against the interests of the state. (*The State* v. *Dodd*, 3 *Murphy*, 226.)

II. The County Court is not a court of common law jurisdiction. Common law is defined to be " that which derives its force and authority from the universal consent and immemorial practice of the people." (2 *Bouv. L. Dic.*, 9.) True, in the seventh article of amendments to the constitution of the United States, it is provided that " in suits at common law, where the value in controversy shall not exceed twenty dollars, the right of trial by jury shall be preserved;" and it is said the term in that place is used in contradistinction to equity, admiralty and maritime law. But common law jurisdiction, as applied to the courts which may naturalize, may, and probably does mean, original jurisdiction also. A mere appellate jurisdiction, confined to cases of appeal from Justices' Courts, and cases arising in such courts where title is in question, which is the only semblance of common law jurisdiction that court has, does not make it a court of common law jurisdiction within the meaning of this provision. The old Court of Errors was not, and certainly this court cannot arrogate to itself such jurisdiction. The decision in *Kundolf* v. *Thalheimer* (2 *Kern.*, 593) is put upon this distinction, as remarked by one of the judges, "if common law actions are to be turned into special cases in this way," &c. The constitution provides that the County Court shall have such jurisdiction, in cases arising in Justices' Courts, and in special cases as the legislature may prescribe, but shall have no original civil jurisdiction, except in such special cases.

The People v. Sweetman.

III. As the legislature have not conferred the jurisdiction to naturalize aliens in the County Court, even if it could do so, there is for that reason no jurisdiction. It is not made one of the special cases. This would be conclusive, were it a subject of state law and jurisdiction. If it be not so, the court, *pro hac vice*, is a United States Court.

IV. The naturalization act requires the court to make a judicial examination of the applicant and his witnesses. It requires a trial by and before the court, on oath administered in open court. It does not contemplate or allow an affidavit as in this case. Here was no conformity, no hearing, no oath, no adjudication. The indictment is not based on any such proceeding; nor is any such proceeding proved. On the contrary, the indictment is based on an affidavit alone; and the proof is that such affidavit alone was made. It was inadmissible for any purpose. The court could not act upon it. (7 *Hill*, 137; 18 *Barb.*, 444.) The indictment must allege an examination on oath in open court. (*Copeland* v. *The State*, 24 *Miss.*, 257.) It must state that a question was presented to and for the adjudication of the court, and that evidence was duly given thereon. (*The State* v. *Moffat*, 7 *Humph.*, 250; *The State* v. *Wall*, 9 *Yerg.*, 349; *Smith* v. *The People*, 1 *Park. Cr. R.*, 317; *The People* v. *Restell*, 3 *Hill*, 304.)

*Henry E. Turner* (District Attorney), for the people.

I. By the act of congress of April 14, 1802, jurisdiction to naturalize is given to state Courts of Record having common law jurisdiction, with a seal and a clerk. County Courts of this state are Courts of Record, have a seal and a clerk, and possess common law jurisdiction sufficient to meet the requirements of the act of congress above mentioned (*Const. N. Y.*, art. 6, § 14; *id.*, art. 14, § 5): First. Because they have appellate jurisdiction over a large class of common law actions originating in Justices' Courts;

Second. And exclusive jurisdiction over a common law action originating in a Justices' Court, where title comes in question, and also the right to issue executions on judgments obtained in Justices' Courts, over the amount of $25, and docketed in said County Court, and control over the same; Third. Because, in their nature, organic structure, rules and practice, they are common law courts, and also exercise jurisdiction in a class of common law actions. (*Const. N. Y.*, art. 6, § 14; *id.*, art. 14, § 5; 5 *Barb.*, 169, 182; 11 *id.*, 619; 17 *id.*, 506; 2 *Seld.*, 176; 2 *Kern.*, 592; *Code*, § 596.)

II. The case in 2 *Kernan* only rules that County Courts have not original jurisdiction in common law actions. It does not overrule the case of *Kundolf* v. *Thalheimer* (17 *Barb.*) by saying they have not common law jurisdiction of some kind within the meaning of the statute.

III. The affidavits of Catillay and Sweetman were properly offered in evidence, as a foundation had been laid for their introduction, and were properly made in the Lewis County Court.

IV. The oath having been duly administered, it is presumed that the proceedings were regular and that the court properly discharged its duty. (16 *Wend.*, 628; 6 *Cranch*, 176; 7 *id.*, 420; 4 *Peters*, 393.)

V. The offence of perjury is a common law offence, cognizable by the courts of the various states.

VI. Though it is an offence against the laws of the United States, yet, being committed in a state court, it is cognizable by both the federal and state courts.

VII. Offences against the United States are also, in many cases, offences against the several states, and are punishable by the state courts. (3 *Serg. & Rawle*, 196; 11 *id.*, 196; 8 *Metc.*, 313; 2 *Hill*, 687; 3 *Hamilton's Works*, 265.)

BACON, J.—The only questions which arise on this *certiorari* are, first, whether the County Court of Lewis county had power to naturalize the alien on whose applica-

The People *v.* Sweetman.

cation the perjury was alleged to have been committed; second, whether the courts of this state have jurisdiction to punish for a violation of what is claimed to be a law of the United States; or, in other words, whether the offence charged was not an offence against the laws of the United States and not the laws of New-York.

On the first point, I entertain no doubt that the County Court has jurisdiction to naturalize aliens. The act of Congress adopts every state court as its agent, to do this service, that is a court of record, and has a common law jurisdiction, and a seal and clerk.

The County Court possesses all these powers and functions. If it has common law jurisdicton, that is sufficient.

It has such exclusive jurisdiction in the common law action of trespass, commenced in a Justice Court, when title to land comes in question; and although this tribunal is shorn of much of its power by the constitution of 1846 and the decision of the Court of Appeals under it, I believe it is not yet divested of this power, not to speak of others which savor of common law.

The second objection, it seems to me, does not arise in this case. No such objection was taken, on the trial, and no motion to quash the indictment was made on that ground. The only defect of jurisdiction alleged was the want of power in the County Court to naturalize. If the objection can be entertained, I am sorry to say that I fear that it must prevail, and a case of gross criminality will go "unwhipped of justice."

The County Court acted as the agent of the government, and was, *pro hac vice*, a tribunal of the United States; and in *United States* v. *Lathrop* (17 *John.*, 4) the Supreme Court of this state held that a state court has no jurisdiction of criminal offences against the United States. The offence being committed in a court of the United States was an offence which could only properly be charged, as is said by Platt, J., in his dissenting opinion, "as an offence commit-

ted against the state, a sovereign whose courts sit in judgment on the offender" The cases cited by the counsel of the people do not uphold the doctrine put forth in the point made by him, but apply to quite a different state of facts.

I repeat that I regret to come to this conclusion, and shall be quite willing to yield my impressions to my brethren, if they come to a different result.

As at present advised, my opinion is that the conviction must be reversed.

PRATT, J.—An important question in this case (although not absolutely necessary to be considered) is raised upon the part of the defendant in regard to the jurisdiction of the state courts to try him for the crime charged against him in this judgment. The question to be considered is, whether the offence charged is one against the laws of the United States, or one against the laws of the state.

There are many crimes made punishable by the laws of the United States which are also made punishable by the laws of the state. In such cases it has been held that the state courts have jurisdiction of the crime. Forging the coin of the United States is an example of this class. As the constitution of the United States gives to congress an exclusive power to coin money and to regulate the value of the same, it would seem to follow that congress is vested with the power to make laws to prevent its being counterfeited. But this would not necessarily take away the power from the state to make the crime also punishable under its laws. And, when the crime is thus made punishable by state laws, it follows as a matter of course that the state courts have jurisdiction to enforce those laws (8 *Metc.*, 313 ; 9 *Ohio*, 133; 1 *Doug.*, 267 ; 2 *Const. R. S. C.*, 77 ; *Curt. Com. on the Const.*, § 133.)

There is another class of cases in which the state courts had jurisdiction before the adoption of the federal constitution, such as crimes punishable at common law. Though

The People *v.* Sweetman.

such crimes are brought under the cognizance of the federal courts by the constitution of the United States and the legislation of congress, yet, unless such jurisdiction is made exclusive by the terms of the constitution, or by the acts of congress, the state courts have concurrent jurisdiction to try them. (8 *Metc.*, 313 ; 12 *How.*, 284 ; *Curt. Com.*, § 121.)

There is still another class' of cases where congress has attempted to vest in state courts jurisdiction of matters arising under the laws of congress. Interesting questions have arisen in cases of this kind, and there is a great conflict of judicial authority whether jurisdiction in the federal courts is not necessarily exclusive in such cases. The preponderance of authority, at least in the state courts, seems to be against the power of congress to confer such jurisdiction, especially when the remedy necessarily involves proceedings either by action or by indictment. (1 *Wheat.*, 336 ; 5 *id.*, 49 ; *Serg. Const. L.*, ch. 27 ; 17 *John*, 15 ; *Virg. Cas.*, 321 ; 7 *Conn.*, 239.)

There is another class of cases in which duties, judicial in in their nature, have been conferred in special cases upon state magistrates and courts, which it has been held that they are not bound to discharge, but may or may not discharge them at their own option, such as the arrest and examination of persons charged with crime, the arrest of fugitives from service under the act of 1793, and various other cases not necessary to enumerate. (*Prigg* v. *Commonwealth*, 16 *Peters*, 531.) The naturalization laws confer powers upon state courts of substantially the same character ; and, without attempting to examine the question in regard to the power of the federal government to confer such jurisdiction upon state courts and magistrates, it seems to me quite clear that, in entertaining such proceedings, they are exclusively under the laws of the United States and should be deemed, *quoad hoc*, courts of the United States. The crime, therefore, with which the prisoner was charged in the indictment was, in my opinion,

a crime against the laws and sovereignty of the United States, and not against the laws and sovereignty of the state.

First. The subject of naturalization is exclusively within the jurisdiction of congress. The constitution confers upon congress the power to eastblish a uniform rule of naturalization, and, having passed laws establishing such rule, the states are excluded from interfering in any manner with the subject. (2 *Wheat.*, 269; 2 *Dal.*, 370; 3 *Wash. C. C. R.*, 313; 5 *Wheat.*, 49; 1 *Kent*, 426.

Second. The state courts, in entertaining these proceedings, are acting directly under the laws of the United States, and form a portion of the judicial agency of the federal government for carrying these laws into effect. They exercise in these proceedings no common law powers, but simply follow the express directions of the act of congress. (2 *U. S. Stat. at Large*, 154.) They should be deemed, therefore, as acting, in such proceedings, as courts of the United States; and such I presume would be the undoubted construction of the acts of magistrates in the examination of persons accused of crime, under the laws of the United States, or fugitives from service under the act of 1793; and yet there is no reason why the same rule should not apply to naturalization proceedings.

Third. These proceedings, being under the laws of the United States, and part of the necessary judicial agency provided by those laws for carrying them into effect, it would seem to follow that false swearing, by a person giving material testimony in those proceedings, must necessarily constitute an offence against tha laws of the United States, and, if so, he must be punishable under the laws of the United States.

The prohibitions against perjury, in the statutes of our state, manifestly contemplate perjury in the state courts, or in proceedihgs before magistrates under the state laws, and not under the laws of another state. In *The State* v. *Adams* (4 *Blackf.*, 146) it was held "that if an affidavit

The People *v.* Sweetman.

be made under an act of congress, relative to the sale of public lands, and the party making it commit perjury, he may be punished under the act of congress prohibiting the offence, but the courts of the state had no jurisdiction." The statute of Indiana provides that " any person who willfully, corruptly and falsely makes an affidavit, &c., should be deemed guilty of perjury." (*Rev. Code* 1831, *p* 186.) This provision is quite as general as the provisions of our statute against the commission of perjury, yet the court in that case held that it was not an offence against the laws of that state.

It will be seen that perjury is made an offence by the laws of the United States, and that there is no reservation of jurisdiction in the state courts of that offence. It is provided by the act of 1790 (*ch.* 9) that "If any person shall willfully and corruptly commit perjury, on his or her oath or affirmation, in any suit or controversy, matter or cause, depending in any of the courts of the United States, or in any deposition taken pursuant to the laws of the United States, every person offending shall suffer," &c. By act of September 24, 1789 (*ch.* 20), exclusive jurisdiction is given to the Circuit Courts of the United States " of all crimes and offences cognizable under the laws of the United States, except when the act otherwise provides or the laws of the United States shall otherwise direct." I have found no statute of the United States conferring jurisdiction upon the state courts to punish for the crime of perjury, under the laws of Congress; although, by subsequent acts, this exclusive jurisdiction has been taken away in regard to some other crimes.

If I am right, therefore, in the position that the court, in these proceedings, is to be deemed a court of the United States, there can be no doubt but that the exclusive jurisdiction of the crime charged in the indictment in this case was in the federal courts, and that the Lewis County Oyer and Terminer had no jurisdiction of it.

The People *v.* Sweetman.

But, independent of the question of jurisdiction, I think the conviction should be reversed. The laws of Congress require the application to be made to the court, and the proof of five years' previous residence must be taken in open court. It must also be common law evidence, taken by the oral examination of the witness. Previously prepared affidavits are not competent. Such was the construction given to the act by this court in 7 *Hill* (137), and 18 *Barb.* (444). In this case there was no proof that any application was made to the court at all, or that the witness was ever sworn in open court, or that the court, in any manner, passed upon the matter. No presumption can be raised in favor of the regularity of the proceedings until it be proved that such proceedings were pending before the court. Until jurisdiction is shown, the presumptions are all the other way. It was therefore necessary to prove, in the first place, the pendency of the proceedings before that court. Before that was done there could be no presumption that the witness was examined orally, and his testimony afterwards put in the form of affidavits. Affidavits found on file were clearly not competent to prove the pendency of such proceedings, especially as there is no law requiring the examination to be taken in writing and filed; and, until the pendency of the proceedings is proved, the certificate of the clerk to these unauthorized affidavits does not prove anything. It is all in the nature of hearsay testimony.

The minutes of the court should have been produced, showing the pendency of the proceedings and the actual oral examination of the witness, before it was competent to show that his testimony was false.

I think, therefore, that the exception to the introduction of the affidavit was well taken, and the conviction, for this reason, should be reversed.

                                        Conviction reversed.