WILLIAM W. TEAL, PLAINTIFF IN ERROR, v. MARY C. FELTON, BY HER NEXT FRIEND, CHARLES T. HICKS.

The 13th and 30th sections of the act of Congress, passed in 1825, (4 Stat. at Large, 105 – 111,) forbid a writing or memorandum from being written on a newspaper, or other printed paper, pamphlet, or magazine, and transmitted by mail.

The Postmaster-General directed that if the wrappers of newspapers, pamphlets, or magazines, should be found to contain any manuscript or memorandum of any kind, either written or stamped, or marks or signs made in any way, by which information shall be asked or communicated, it should be charged with letter-postage.

The part of the order relating to marks or signs was not justified by the law.

Hence, where a postmaster refused to deliver a newspaper upon which there was an "initial," unless the person to whom it was addressed would pay letter postage, he was properly held liable in an action for trover. It was not a case calling for discretion in the discharge of his duties. The law, and not the instructions of a department, furnishes the guide to officers.

The State court had jurisdiction to try the case. State courts had jurisdiction over all cases of trover, and the Constitution of the United States did not abrogate their jurisdiction in such cases as the present.

THIS case was brought up from the Supreme Court of the

Teal v. Felton.

State of New York, by a writ of error, issued under the 25th section of the Judiciary Act.

Teal, the plaintiff in error, was postmaster in Syracuse, in the State of New York, and the case arose in the following manner:

The 13th section of the act of 1825 (4 Stat. at Large 105,) provided as follows: " Any memorandum which shall be written on a newspaper, or other printed paper, pamphlet, or magazine, and transmitted by mail, shall be charged with letter-postage." And the 30th section of the same act (4 Stat. at Large, 111) provided as follows: " If any person shall inclose or conceal a letter or other thing, or any memorandum in writing, in a newspaper, pamphlet, or magazine, or in any package of newspapers, &c., &c., or make any writing or memorandum thereon, which he shall have delivered into any post-office, or to any person for that purpose, in order that the same may be carried by post free of letter-postage, he shall forfeit the sum of five dollars for every such offence, and the letter, newspaper, package, memorandum, or other thing shall not be delivered to the person to whom it is directed, until the amount of single letter-postage is paid for each article of which the package is composed."

The act of 1845, sections 1, 2, and 16, fixes the rates of postage upon letters and newspapers, and defines a newspaper to be " a printed publication issued in numbers, consisting of not more than two sheets, and published at short intervals of not more than a month, conveying intelligence of passing events, and the *bonâ fide* extras and supplements of any such publication."

On the 4th of December, 1846, the Postmaster General issued the following circular:

" *To Postmasters :*

" I am directed by the Postmaster-General to call your special attention to the multiplied and increasing attempts to violate the laws and defraud the revenue, by writing on the wrappers, margin, or other portion of newspapers, pamphlets, and magazines, sent by mail.

" The cheap postage system has removed every reasonable excuse for violating or evading the law, and too much vigilance cannot be exercised by postmasters to detect and punish the offenders; and public sentiment, when well informed, will not fail to sustain you in the faithful discharge of this duty, which is as imperative upon you as any other. That frauds of this kind may be detected and traced to their origin, you are particularly instructed to stamp, or mark in writing, any transient (by which is meant all not regularly sent to subscribers) newspapers, pamphlets, or magazines, with the name of the office and the amount of postage.

" The wrappers of all such newspapers, pamphlets, and magazines, when they have reached their destination, should be carefully removed, and if upon inspection found to contain any manuscript or memorandum of any kind, either written or stamped, or by marks or signs made in any way, either upon any newspapers, printed circular, price-current, pamphlet, or magazine, or the wrapper in which it is inclosed, by which information shall be asked for or communicated, except the name and address of the person to whom it is directed, such newspaper, printed circular, price-current, pamphlet, or magazine, with the wrapper in which it is inclosed, shall be charged with letter-postage by weight. If the person to whom the newspaper, printed circular, price-current, pamphlet, or magazine is directed, refuses to pay such letter-postage thereon, the postmaster will immediately transmit the same to the office from whence it was forwarded, and request the postmaster thereof to prosecute the same for the penalty of five dollars, as prescribed by the 30th section of the act of 1825. Suits may be brought either in district courts, or before State magistrates having civil jurisdiction in actions of debt, for this amount, under the respective State laws; the name of the sender written or stamped either upon the newspaper, printed circular, price-current, pamphlet, or magazine, or the wrapper in which it is inclosed, communicates such information, as subjects it to letter-postage, and the consequential penalties if such postage is not paid at the place of its destination. The diminution of the revenue of the Department under the cheap postage system, and the great and increasing demand for additional mail facilities throughout the country, whose territory now extends to the Pacific, renders it absolutely necessary, not only that every cent of lawful revenue be collected and accounted for, but that the utmost vigilance should be exercised for the prevention of fraud, and the sure and speedy infliction of the proper penalty upon the offender. This can only be accomplished by the strictest attention of postmasters, who are the sworn agents of the Department, and bound to see the laws faithfully administered.

" W. J. BROWN,
" 2d Assistant Postmaster-General.
" Post Office Department, Dec'r 4, 1846."

In February, 1847, there came to the post-office at Syracuse, a newspaper, called the Michigan Expositor, which was put into the box of Mr. Hicks. There was an initial upon the wrapper of the paper, distinct from the direction, and no part of it, the initial being a single letter. In consequence of this, it was charged with letter-postage, which Mr. Hicks refused to

Teal *v.* Felton.

pay, but tendered the newspaper postage. It was admitted that Mr. Hicks had authority to demand the paper for Mary C. Felton, to whom it was addressed, and that its value was six cents.

Hicks brought an action of trover against Teal, the postmaster, before a justice of the peace for Onondaga county, before whom the question of jurisdiction was raised. The justice, however, sustained his jurisdiction, and gave judgment against the postmaster, (the cause being tried by a jury) for six cents damages and two dollars and eighty-nine cents costs.

A writ of *certiorari* removed the cause to the Court of Common Pleas, in and for the county of Onondaga, which, at May term, 1847, affirmed the judgment of the justice, with twenty-two dollars and ninety-five cents costs.

Teal then carried the case to the Supreme Court of the State of New York, which, in June, 1848, approved the judgment of the Court of Common Pleas, with thirty-seven dollars and sixty cents additional costs, making, in the whole, sixty dollars and fifty-five cents.

This decision was reviewed by the Court of Appeals, who decided that there was no error in it; and gave judgment for seventy-five dollars and sixty-four cents, making, in the whole, one hundred and thirty-six dollars and nineteen cents.

A writ of error, sued out by Teal, brought the case up to this court.

It was argued by *Mr. Dillage*, for the plaintiff in error, and *Mr. Seward*, for the defendant in error.

The points made by *Dillage* were the following:

I. That the justice had no jurisdiction.

1. Because the plaintiff in error acted under and by virtue of the statutory laws of the United States. Constitution U. S. art. 1, sect. 8; Circular of the P. M. Gen. 1845; 3 Laws United States by Story, 1990.

2. Because, if the action complained of was a violation of duty, the right it violated never existed at common law, nor by virtue of State Constitutions or laws. 2 Hildreth's History U. S. 181; 9 Anne, c. 9; 15 Encyclopædia Britannica, 424; 2 Hildreth's History U. S. 327; 9th art. of the Confederation; 4 Elliot's Deb. 354, 355; 3 Story's Com. sect. 1124; 3 Story's Laws U. S. 2066, sect. 3.

3. Because the State courts possess no jurisdiction, but such as they derived from the common law; and under their own State constitution and laws. Constitution U. S. art. 3, sect. 1; Martin *v.* Hunter, 1 Wheat. R. 330; United States *v.* Lathrop, 17 Johns. R. 8; 3 Story's Com. sect. 1749.

4. Because such jurisdiction would not only be a usurpation

of authority, but opposed to the policy of the general government. McCullock *v.* The State of Maryland, 4 Wheat. R. 316; Federalist, No. 80; Sturges *v.* Crowninshield, 4 Wheat. 122; Montesquieu, Esprit des Lois, liv. 11, c. 61; 1 Toullier, Droit Civil, c. 9, sect. 122. It would enable courts to adjudicate where the legislative authority could not act. United States *v.* Bevans, 3 Wheat. R. 336; United States *v.* Cornell, 2 Mason, R. 60; 3 Story's Com. sect. 1752; Wayman *v.* Southard, 10 Wheat. R. 13.

5. Jurisdiction is not acquired by State courts, by reason of those courts having jurisdiction in the kind of action in which the suit is brought, if the remedy depends upon a statute law peculiar to the United States general government. 17 Johns. R. 4; Gelston *v.* Hoyt, 3 Wheat. R. 246; United States *v.* Cornell, 2 Mason, R. 63; Slocum *v.* Mayberry, 2 Wheat. R. 1; Osborn *v.* The Bank of the United States, 9 Wheat. R. 747.

6. Because the postmaster is alone subject to the control of the power which created him its instrument. McClung *v.* Silliman, 6 Wheat. R. 598.

Finally. Because the authority of the general government would not be supreme, if the courts of every State could vary and regulate its officers in the performance of their duties. Cohens *v.* Virginia, 6 Wheat. 264; Federalist, No. 80.

II. The plaintiff in error, was an officer of the government, and required by law to exercise his judgment in the performance of the duty the law imposed upon him, in fixing the amount of postage on the paper for which this action was brought.

Officers required by law to exercise their judgment are not answerable for mistakes of law, or mere errors of judgment. Drewe *v.* Colton, 1 East, R. 563 in note; Seaman *v.* Patten, 2 Caines, R. 312; Jenkins *v.* Waldron, 11 Johns. R. 114; Weaver *v.* Devendorf, 3 Denio, 117; Kendall *v.* Stokes, 3 How. 97; Opinions of the Attor. Gen. 1018, vol. 2.

*Mr. Seward,* for defendant in error, made the following points:
I. The justice had jurisdiction. Wilson *v.* Mackenzie, 7 Hill, R. 95. See also case, Opinion of Justice Gridley, 43–46; Bruen *v.* Ogden, 6 Halstead, 370, 377, 379, 381; Story on Agency, sect. 319, 319 *a*, 319 *b*, 320, 221, 322; Cowp. 754; 1 Kent's Com. 386.

II. The only question in the case upon the merits was one of fact; and the jury having found for the plaintiff in the court below, the court will not disturb the verdict. 18 Wend. R. 141; 1 Hill R. 61; 2 J. R. 378; 3 J. R. 435–439. See also Opinion of Justice Gridley in the case, 46, 53. See also the

Teal v. Felton.

Opinion of Wright, judge, in the Court of Appeals, on the decision of this case, Teal v. Felton, 1 Comst. R. 537 – 549, and the authorities cited by the judge.

Mr. Justice WAYNE delivered the opinion of the court.

This suit was brought in a justices' court to recover from the plaintiff in error the value of a newspaper, received by him as postmaster at Syracuse, which he refused to deliver to the defendant in error to whom it was addressed. The plaintiff in error had charged the newspaper with letter-postage, on account of a letter or initial upon the wrapper of it, distinct from the direction. This the defendant refused to pay, at the same time tendering the lawful postage of a newspaper. The postmaster would not receive it, and retained the paper against the will of the defendant; upon that demand and refusal the suit was brought. The action was trover, and the general issue was pleaded. In the course of the trial when the defendant in error, who was plaintiff in the suit below, was introducing testimony in support of his case, the defendant objected to a further examination of the case by witnesses, upon the ground that the court had not jurisdiction of the case. The objection having been overruled, the trial of the case was continued; and after the plaintiff had proved that he demanded from the defendant the newspaper, tendering the lawful postage, and that the postmaster refused to deliver it to him, he rested his case.

The defendant below then moved for a nonsuit, which having been denied, he offered in evidence a circular from the Post-Office Department of the 4th December, 1846, marked in the record as A, and also the Post-Office act of 1845. The case was submitted to a jury. A verdict was rendered by it against the defendant, upon which a judgment was entered. The defendant carried the case to the Court of Appeals, and the judgment of the lower court was affirmed. It is brought to this court by a writ of error. As the Court of Appeals could not have adjudicated the case without having denied to the defendant a defence which he claimed under a law of the United States, the case is properly here under the 25th section of the Judiciary Act of 1789.

The circular from the Post-Office Department is as follows:
"The wrappers of all such newspapers, pamphlets and magazines, when they have reached their destination, should be carefully removed; and if upon inspection they are found to contain any manuscript or memorandum of any kind, either written or stamped, or by marks or signs made in any way, either upon any newspaper, &c., &c., or the wrapper upon which it is inclosed, by which information shall be asked or communicated, except the name of the person to whom it is directed, such newspaper,

Teal *v.* Felton.

&c., &c., with the wrapper in which it is inclosed shall be charged with letter-postage by weight."

If the person to whom the newspaper is directed, refuses to pay the letter-postage, the postmaster is directed to transmit the same to the office whence it came, with a request that the person who sent it may be prosecuted for the penalty of five dollars, according to the 30th section of the act of 1825. Those parts of the 30th section mentioned, upon which the circular was issued, and of the 13th section of the act directing that a memorandum which shall be written on a newspaper, shall be charged with letter-postage are : " If any person shall inclose or conceal a letter or other thing, or any memorandum in writing in a newspaper, pamphlet or magazine, or in any package of newspapers, &c., &c.; or make any writing or memorandum thereon, which he shall have delivered in any post-office or to any person for that purpose, in order that the same may be carried by post, free of letter-postage, he shall forfeit the sum of five dollars for every such offence, and the letter, newspaper, package, memorandum or other thing, shall not be delivered to the person to whom it is directed until the amount of single letter-postage is paid for each article of which the package is composed. That part of the 13th section of the act mentioned is : " Any memorandum which shall be written on a newspaper or other printed paper, pamphlet or magazine, and transmitted by mail, shall be charged with letter-postage." 4 Laws of the United States, 105–111. Those parts of the law of 1845, in any way applicable to this case, are the 1st and 2d sections fixing the rates of postage upon letters and newspapers, and the 16th section, which defines a newspaper to be a printed publication issued in numbers, consisting of not more than two sheets, and published at short intervals of not more than a month, conveying intelligence of passing events, and the *bonâ fide* extras and supplements of any such publication. 5 U. S. L. 732, 737.

From the evidence in this case, we do not think that the initial or letter upon the wrapper of the newspaper in this case, subjected it either under the 13th or 30th section of the act of 1825 to letter-postage. Why it was placed there, supposing it not to have been accidental, cannot be found out from this record, and it must have been a meaningless mark to the postmaster. It may have excited a suspicion, that it was a sign arranged between the person sending it and the person to whom it was directed, to convey information of some sort or other, for which letter-postage would have been charged, if it had been conveyed in words. The act forbids a memorandum in the 13th section ; and in the 30th, providing for a penalty, the terms are, " any writing or memorandum;" but in neither are found, the terms "marks

or signs," as used in the circular. No provision is made for such a case. It must be obvious too, that frauds of that kind cannot be prevented in the transmission of newspapers, without legislation by Congress, subjecting newspapers conveyed by mail to letter-postage, whenever there shall be, either upon the newspaper or the wrapper of it, any letter, sign, or mark, besides the address of the person to whom it is sent. A single letter or initial upon the wrapper of a newspaper, is neither a memorandum nor a writing in the sense in which either of those terms are ordinarily used, or as we think they were intended to be used in the 30th section of the act. Both mean something in words to convey intelligence, a remembrance for one's self or to another. The act speaks of something concealed in a newspaper or package of newspapers, of a writing or memorandum, from which it may be seen to have been the intention of the sender to convey information clandestinely under the wrapper, or upon it in a form, though not disclosing what it is, which will leave no doubt of his intention. The initial in this case does not seem to have been one or the other. It is not a memorandum certainly, and a single letter of the alphabet can convey no other idea than that it belongs to it, unless it is used numerically. This was not a case in which judgment coul. be used to determine any fact, except by some other evidence than the letter itself. Nor was it one calling for discretion in the legal acceptation of that term in respect to officers who are called upon to discharge public duties. What was done by the postmaster, was a mere act of his own, and ministerial, as that is understood to be, distinct from judicial. It could not have been the intention of Congress to put it in the power of postmasters, upon a mere suspicion raised by a single letter or initial, to arrest the transmission of newspapers from the presses issuing them, or when they were mailed by private hands.

This view of the law, disposes also of that point in the argument, claiming for the postmaster an exemption from the suit of the plaintiff, upon the ground that he was called upon, in the act which he did, to exercise discretion and judgment. In Kendale *v.* Stokes, 3 How. 97, 98, will be found this court's exposition upon that subject, with the leading authorities in support of it. The difference between the two, must at all times be determined by the law under which an officer is called upon to act, and by the character of the act. It is the law which gives the justification, and nothing less than the law can give irresponsibility to the officer, although he may be acting in good faith under the instructions of his superior of the department to which he belongs. Here the instructions exceed the law, as marks and signs of themselves, without some knowledge of their meaning, and

the intention in the use of them, are, as we have said, neither memoranda nor writings. Tracy *v*. Swartwout, 10 Pet. 80.

But it is said that the courts of New York had not jurisdiction to try the case. The objection may be better answered by reference to the laws of the United States, in respect to the services to be rendered in the transmission of letters and newspapers by mail, and by the Constitution of the United States, than it can by any general reasoning upon the concurrent civil jurisdiction of the courts of the United States, and the courts of the States, or concerning the exclusive jurisdiction given by the Constitution to the former.

The United States undertakes, at fixed rates of postage, to convey letters and newspapers for those to whom they are directed, and the postage may be prepaid by the sender, or be paid when either reach their destination, by the person to whom they are addressed. When tendered by the latter or by his agent, he has the right to the immediate possession of them, though he has not had before the actual possession. If then they be wrongfully withheld for a charge of unlawful postage, it is a conversion for which suit may be brought. His right to sue existing, he may sue in any court having civil jurisdiction of such a case, unless for some cause the suit brought is an exception to the general jurisdiction of the court. Now the courts in New York having jurisdiction in trover, the case in hand can only be excepted from it by such a case as this having been made one of exclusive jurisdiction in the courts of the United States, by the Constitution of the United States. That such is not the case, we cannot express our view better than Mr. Justice Wright has done in his opinion in this case in the Court of Appeals. After citing the 2d section of the 3d article of the Constitution, he adds, "this is a mere grant of jurisdiction to the federal courts, and limits the extent of their power, but without words of exclusion or any attempt to oust the State courts of concurrent jurisdiction in any of the specified cases in which concurrent jurisdiction existed prior to the adoption of the Constitution. The apparent object was not to curtail the powers of the State courts, but to define the limits of those granted to the federal judiciary." We will add, that the legislation of Congress, immediately after the Constitution was carried into operation, confirms the conclusion of the learned judge. We find, in the 25th section of the Judiciary Act of 1789, under which this case is before us, that such a concurrent jurisdiction in the courts of the States and of the United States was contemplated, for its first provision is for a review of cases adjudicated in the former, "where is drawn in question, the validity of a treaty or statute of, or an authority exercised under the United States, and the decision is against their valid-

ity." We are satisfied that there was no error in the decision of the Court of Appeals in this case, and the same is affirmed by this court.

## Order.

This cause came on to be heard on the transcript of the record from the Supreme Court of the State of New York, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the Court of Appeals of the said State of New York in this cause, and as remitted to the said Supreme Court be, and the same is hereby affirmed, with costs.