Whaley, Judge,
delivered the opinion of the court.
The plaintiff brings this action against the United States to recover increased cost of performance of its contract due to compliance with the Codes of Fair Competition. The defendant enters a demurrer to the petition on the ground *272 that the court is without jurisdiction for the following reasons:
(1) It fails to state a cause of action within the jurisdiction of this court.
(2) It is multifarious. It seeks to do by indirection that which should be undertaken directly, in that it asks primal relief for those not parties to the suit.
(3) It fails to state a cause of action against the United States.
The petition includes two causes of action. It appears that Starrett Brothers & Ekin, Inc., entered into a contract with the United States to erect a post office building at Philadelphia, Pennsylvania, and that the plaintiff prior to June 16, 1933, to wit, on October 5, 1932, entered into a written contract with the Starrett Brothers & Ekin, Inc., to furnish all material and perform all labor incident to the brick, hollow tile, and glazed tile work required by the contract entered into between the United States and the Starrett Brothers & Ekin, Inc.; that the plaintiff, as a subcontractor of the prime contractor, entered into a subcontract on December 8, 1932, with Grays Ferry Brick Company, of Philadelphia, Pennsylvania, at a fixed price for future delivery and use in the Philadelphia Post Office for certain bricks required tó be furnished under plaintiff’s subcontract with Starrett Brothers & Ekin, Inc.; that plaintiff, as subcontractor of Starrett Brothers & Ekin, Inc., on May 4, 1933, entered into a subcontract at a fixed price with the National Fireproofing Corporation, of Pittsburgh, Pennsylvania, for future delivery and use in the Philadelphia Post Office for certain glazed tile required to be furnished by the plaintiff under its subcontract with Starrett Brothers & Ekin, Inc.; that on August 10,1933, the brick, hollow tile, and glazed tile work required under the subcontract was completed to the extent of 4.6 per cent.
The plaintiff alleges that it and its two aforesaid subcontractors had fully complied and operated conformably to the Industrial Recovery Act approved June 16, 1933 (48 Stat. 195) ; that plaintiff and the two sub-subcontractors each signed an agreement with the President in keeping with the Act aforesaid; that all and each of them had adhered strictly *273 to and complied faithfully with the President’s Reemployment Agreement and the Code of - Fair Competition applicable to their respective business and industry; that from and after September 3, 1933,'all materials manufactured by the National Fireproofing Corporation, including that portion used by the plaintiff in the Post Office Building, were manufactured and produced while the corporation was complying with the President’s Reemployment Agreement and Code; that the Grays Ferry Brick Company of Philadelphia in the production and manufacture of material from and after August 10,1933, including the same that was manufactured and delivered to plaintiff for use in the Philadelphia Post Office Building, complied with the President’s Reemployment Agreement and Code. In reference to inquiries of its subcontractors, the plaintiff assured its subcontractors that their added cost, resulting from their compliance with the said agreement, would be the subject of a claim against the plaintiff and that it would be bound to recognize said claim and pay same after the completion of the said contract, subject to the provisions set forth in the Agreement of the President; that the subcontractor (the plaintiff) has not paid to its subcontractors the losses and added cost incurred by them. It is also alleged that the subcontractors made written demand upon the plaintiff for the amounts alleged due them because of their compliance with the agreements and codes above referred to and that the National Fireproofing Corporation’s increased cost amounted to $18,815.00 and the Grays Ferry Brick Company’s amounted to $2,441.60. It is alleged that the plaintiff admitted the demands of its two subcontractors were correct and just and agreed to pay the same “subject to the provisions of the President’s Reemployment Agreement, Section 12, as amended, and of Title I, Article IV of the Code for the Construction Industry, Mason’s Division.”
It is further alleged that the plaintiff placed a claim with the Treasury Department, Procurement Division, for the above amount and that this claim, together with an administrative report, was by the Treasury Department transmitted to the Comptroller General of the United States who -declined to make payment for the reasons assigned in the *274 Acting Comptroller General’s letter to the plaintiff on July 21, 1936, a copy of which letter is made Exhibit “B” to the petition. The material part of the Acting Comptroller General’s determination is as follows:
The record indicates that your claim does not cover increased costs incurred by you in the performance of the above mentioned contract, but instead it represents alleged additional costs incurred by those from whom you purchased materials; namely, Grays Ferry Brick Company, and the National Fireproofing Corporation. Further, it does not appear that you intend to benefit from any allowance made under this claim, but rather that you intend to turn over the proceeds to these material men. You have not paid the increased costs for which you now make claim nor is there shown to be any presently existing legal obligation upon you to do so.
The Act of June 16,1984, provides relief only to Government contractors, their subcontractors and material men; it does not provide relief to subcontractors of the United States. The National Fireproofing Company, and the Grays Ferry Brick Company are both subcontractors under the Philadelphia Post Office contract, and therefore are not eligible to file a claim of this nature in their own behalf. The latter Company was so advised by letter of this office dated April 4, 1935. Of course, these subcontractors are not entitled to do by indirection what they could not do directly. The Act of June 16, 1934, obviously was not intended to relieve those in the position of the National Fireproofing Company and Grays Ferry Brick Company.
I therefore certify that no balance is found due you from the United States.
The plaintiff alleges the Comptroller General disregarded plaintiff’s obligation to reimburse its subcontractors as required by the President’s Reemployment Agreement and the Code applicable to its business.
The claim of the plaintiff is based on the ground that the Comptroller General decided upon plaintiff’s legal rights whimsically and capriciously. ■
Although the defendant has alleged several grounds on which the suit should be dismissed for lack of jurisdiction, we do not feel that it is necessary to discuss each one of these grounds separately. It is apparent that the act of *275 June 16, 1934 (48 Stat. 974), places in the Comptroller General exclusive discretion and therefore this Court has no jurisdiction under the statute.
On June 16, 1934, Congress passed the following Act:
That the Comptroller General of the United States be, and he is hereby, authorized and directed to .adjust and settle on a fair and equitable basis claims of persons who entered into a contract or contracts with the United States prior to August 10, 1933, including subcontractors and materialmen performing work or furnishing material or necessary fuel direct to the contractor under such contracts', for additional costs incurred by reason of compliance on and after August 10, 1933, with a code or codes of fair competition approved by the President under section 703 of Title 15, or by reason of compliance with an agreement with the President executed under section 704 of Title 15 in the performance after August 10, 1933, of the contract or any part thereof. In the event that such contract was performed wholly or in part by a surety on the bond of the contractor, the claim may be presented by and settlement made with such surety, but such surety shall have no greater rights than would have accrued to the contractor had such contractor completed the contract. Any contractor, subcontractor, or completing surety desiring an adjustment and settlement with respect to any such contract under sections 28 to 33 of this title for increased costs incurred after August 10, 1933, by reason of compliance with the codes or reemployment agreements shall file with the department or administrative establishment concerned a verified claim itemizing such additional costs? and any subcontractor on any such contract may file his claim directly with the head of the department or independent establishment concerned or through the contractor. After the claim has been examined by the head of the department or independent establishment concerned, or such person or persons as he shall designate, the claim shall be transmitted to the Comptroller General of the United States, accompanied with an administrative finding of fact and recommendation with respect to the claim. 48 Stat. 974.
The statute provides for the relief of four classes of those who had contracts or who furnished material to the Government and who had incurred additional costs by reason of the adoption of the agreements and codes of the Presi *276 dent. It provides for the relief of a prime contractor, subcontractor, materialmen “performing work or furnishing material or necessary fuel direct to the contractor,” and for the protection of the surety on the bond of the contractor where the contract has been performed wholly or in part by the surety. A careful reading of the act does not disclose any other class to be protected. Only these classes are specifically provided for. Where a class is designated in the act, all other classes are excluded. Although the plaintiff is a subcontractor of the prime contractor, and would be entitled to relief under the act if it were shown that it had incurred any increased cost, nevertheless, the petition shows that the losses for which the plaintiff is suing are not those incurred by it due to the Agreements or Codes but losses by its “subcontractors” who are actually sub-subcontractors of the prime contractor. The plaintiff has not paid to these subcontractors any alleged losses incurred by them but seeks to recover from the Government the losses of its subcontractors, and, when recovery is had, to make payments to them. The Act does not provide for losses sustained by sub-subcontractors, and the Comptroller General so ruled.
In the interpretation of the statute it is necessary tó give the words of the act their ordinary and customary interpretation, and with this rule applied the decision of the Comptroller General that the losses of the sub-subcontractors are not covered by the Act is a correct interpretation of its meaning. However, should we not be correct in this interpretation of the Act, nevertheless this court would have no jurisdiction to entertain this suit, because it is our view that Congress vested in the Comptroller General complete and exclusive discretion in the factual determination of what would be a fair and equitable settlement. If an appeal could be taken to this court on a question of law, still it would be impossible for this court to make a factual determination of plaintiff’s rights under the Act because the Comptroller General is the sole arbiter under the terms of the statute to determine what would be a fair and equitable basis of settlement. The exercise of discretion on the part of the Comptroller General in arriving at the amount the plaintiff would be entitled to *277 receive is absolutely necessary and this court can not substitute itself in the place of the Comptroller General where matters of discretion are confided to him under the terms of the statute.
The statute creates the right to have repayment under the facts therein stated, but it gives no remedy for a refusal on the part of the Comptroller General to comply with its provisions. If the right arose under a question of law alone, an appeal would lie to the courts. But, where it involves a mixed question of law and fact or the determination of facts alone and the discretion is placed exclusively in a designated official, there is no review by the courts. Congress does not have to provide a remedy through its courts where it creates rights in individuals against itself. Where a special remedy is provided in a statute creating a right, that special remedy is exclusive. These general rules are held in United States v. Babcock, 250 U. S. 328, 331, as well settled.
To hold the plaintiff had a right of review in this court would require the court to exercise the discretionary power to adjust and settle on a fair and equitable basis the claim of plaintiff. This would necessarily involve a finding of fact. Congress has placed exclusively the factual determination within the discretion of the Comptroller General. Where a discretion is placed in a designated official by an Act of Congress there can be no substitution of any other official to exercise that discretion. Breen Stone & Marble Co. v. United States, 21 Fed. Sup. 982; Williamsport Wire & Hope Company v. United States, 277 U. S. 551.
In Dismuke v. United States, 297 U. S. 167, 171, 172, Mr. Justice Stone said:
The United States is not, by the creation of claims against itself, bound to provide a remedy in the Courts. It may withhold all remedy or it may provide an administrative remedy and make it exclusive, however mistaken its exercise. See United States v. Babcock, 250 U. S. 328. But, in the absence of compelling language, resort to the Courts to assert a right which the statute creates will be deemed to be curtailed only so far as authority to decide is given to the administrative officer. If-the statutory benefit is to be allowed only in his discretion, the Courts will not substitute their discretion for his.
*278 An administrative act only is required for a determination of the claim. There is no provision for an appeal from the determination of this administrative officer. The reading of the whole act shows clearly that Congress intended that where the Comptroller General made a decision it should be final and conclusive on all parties. Claims under this act are not within the jurisdiction of this court.
The demurrer is sustained. It is so ordered.
Williams, Judge; Littleton, Judge; Gkeen, Judge; and Booth, Chief Justice, concur.