**SCHREIBER et al. v. UNITED STATES.**

No. 7855.

Circuit Court of Appeals, Seventh Circuit.

June 26, 1942.

Rehearing Denied July 16, 1942.

J. Albert Woll, U. S. Atty., and W. S. White, Jr., Asst. U. S. Atty., both of Chicago, Ill., and Martin Norr, of Washington, D. C. (Francis M. Shea, Asst. Atty. Gen., and Sidney J. Kaplan, Sp. Asst. to Atty. Gen., on the brief), for appellant.

Leonard D. Karcher, Geo. A. Chritton, and Charles J. Merriam, all of Chicago, Ill., for appellee.

Before SPARKS, KERNER, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

Appellees sued to recover a refund claimed to be due them for excess postage which they were required to pay for the mailing of certain items as first-class mail instead of at the third-class rate which they are now permitted to use and which they assert should have been permitted them all the time. The facts were stipulated, and the court, basing its findings on such stipulation, concluded that it had jurisdiction of the cause and that appellees were entitled to the refund claimed.

Appellees are engaged in the business of manufacturing and selling certain types of cards known as "push-cards" and "pull-cards" which are used for raffling merchandise. According to the description of the stipulation, the cards are made of two pieces of thin cardboard pasted together. They contain a number of small circular portions which in the case of the push-cards, are to be punched out, exposing a printed number on one of the pieces of cardboard. Under each circle is printed a girl's name, and on the back of the card is a list of names corresponding to those on the front of the card under the circle where the person who punches out the circular portion writes his own name. There is a larger circular portion also on the face of the card which is also to be punched out when all of the small perforated circles have been punched out, and under this is printed a name corresponding to one of the names under the small circles. This name receives the article of merchandise which is the subject of the sale, and which is described on the card. According to the description on the card, certain numbers are free; others up to a certain number pay according to the number punched; and the balance pay a maximum of from 30 to 39 cents. The pull cards are similar except that they provide a tab to be pulled off the number instead of pushing it out, as in the case of the push card.

Appellees sold these cards as merchandise for ten or twenty-five cents apiece, paying a tax of 10% on each, and retaining no interest in the operation or use of the cards after they were sold to the purchasers.

In 1933, in response to an inquiry from one of the appellees, addressed to the United States Post Office in Chicago, regarding the classification of the cards, the Acting Postmaster notified him that the cards would be mailable in unsealed parcels at the third or fourth-class rate when bearing the printed inscription on the outside including the name of the manufacturer or dealer. He commented on the fact that it was noted that the sales cards were to be sold outright and that appellee's concern retained no interest in their operation after sale to the addressee. Appellees thereupon had a large number of the cards and envelopes printed and sent them out as per instructions.

In February, 1934, the Postmaster at Chicago notified appellees that a lot of the punchboards were being held at the Post Office for additional postage at the first-class rate. In response to appellees' protest, this classification was confirmed by the Department at Washington, and thereafter, appellees were required to pay at the first-class rate, from February 2, 1934, to November 22, 1937, although they continued to send their merchandise in unsealed envelopes on which was printed the postal legend and their name and address.

In November 1937, appellees again protested as to the classification of their mail, and at that time there was a ruling that the cards described could be sent as third-class matter provided a slip was enclosed within the envelope on which was printed "Contents merchandise; Postmaster: This parcel may be opened for postal inspection if necessary," which legend was to be printed on the face of any cards thereafter printed.

In November 1938, appellees filed their claim for the amount paid by them in excess of the rate of postage for third-class matter, and after rejection of this claim, they presented a second claim which was also rejected, whereupon they filed their suit for refund in the District Court. The parties stipulated that appellees "were not benefited by having their mail matter accorded the treatment of first-class matter during the period 1934-1937 and it was only because of the ruling of the Post Office Department that the cards were first-class mail, that postage at the first-class rate was affixed." They also stipulated that: "It was impossible for plaintiff to distribute such cards except by mail."

Appellee Klompus testified as to the procedure employed in the office relating to the mailings, and estimated the number of pieces sent out at the excess rate accordingly. On the basis of this evidence the court found that 635,936 pieces of mail had been sent at the first-class rate, the excess postage on which amounted to $9,539, on which amount he entered judgment in favor of appellees.

Appellant asserts that the primary issue is that of jurisdiction, contending that the court's conclusion as a matter of law that it had jurisdiction is clearly erroneous, and citing for the first time, 39 U.S.C.A. § 300 to support its contention that the Postmaster General had exclusive and final jurisdiction over such claims as are here involved. The section provides:

"Refund of postage paid for service not rendered, or in excess of legal rate.—Whenever it shall be shown to the satisfaction of the Postmaster General that any postage is paid on any mail matter for which service is not rendered, or is collected in excess of the lawful rate, he may, in his discretion, authorize the postmaster at the office where paid to refund the proper amount out of the postal receipts in the possession of the postmaster."

Appellant relies upon a recent case in which relief was claimed under this section but denied by the Court of Claims. See Montgomery Ward & Co. v. United States, 94 Ct.Cl. 309. Inasmuch as the reason for the failure to render the service paid for in that case was the loss of the goods themselves in a wreck, rendering their delivery impossible, we consider the facts of the case in no way analogous, and the dismissal of the petition no authority for similar action here.

Appellees assert that they are not relying on § 300 for their relief, and that it was a special remedial statute for the purpose of simplifying repayment of sums of inconsequential amounts paid through mistake, ignorance, or misinterpretation of instructions. They state that refunds under it did not amount to $1000 a year, and that the statute was enacted to permit the Postmaster General legally to continue the discretionary practice of repaying such small sums out of the postal receipts in the hands of the postmaster where paid, citing Cong. Rec. 58th Congress, Vol. 39, p. 3726. Whether they might have relied upon this section or not, they maintain that their chief reliance was upon the Tucker Act which permits suits against the United States on "all claims not exceeding $10,000 founded upon the Constitution * * * or any law of Congress, or upon any regulation of an executive department, * * * or for damages, liquidated or unliquidated, in cases not sounding in tort, in respect to which claims the party would be entitled to redress against the United States, either in a court of law, equity, or admiralty, if the United States were suable * * *." 28 U.S.C.A. § 41 (20).

While the question of jurisdiction is not entirely free from doubt, and we find no case where a suit has been successfully maintained against the United States either in the District Court under the Tucker Act, or in the Court of Claims, for the recovery of excess postage, we think jurisdiction may be spelled out of a series of decisions by the Supreme Court.

That the payment of excess postage is the proper subject matter of a suit at law appears to be determined by Lewis Publishing Co. v. Wyman, 8 Cir., 182 F. 13, affirmed 228 U.S. 610, 33 S.Ct. 599, 600, 57 L.Ed. 989. The Court there referred to the holding of the Court of Appeals, "that its [Lewis Company's] claim for reimbursement for certain payments made *pendente lite* for postage in excess of the amount calculated at the second-class pound rate was the proper subject-matter of a suit at law, leave to bring which was reserved in the decree." Affirming the decree, the Court distinguished between moneys paid prior to the inception of a bill in equity which was held to have become moot as a result of certain developments during the litigation, and moneys paid thereafter, and said, "The smaller amount only would in any view be within the fair scope of inquiry under the bill, and *it would still be necessary for appellant to resort to an action at law for the previous payments.*" (Our italics.)

This decision, announced in 1913, involved a suit begun in 1907, two years after the enactment of § 300, and none of the courts appear to have felt that failure to proceed under its provisions was a bar to the relief sought. And if, under the decision, action at law may be had to recover excess postage charged by the Department under a ruling alleged to be erroneous, then under the further ruling in the case, United States v. Emery, Bird, Thayer Co., 237 U.S. 28, 35 S.Ct. 499, 500, 59 L.Ed. 825, it would appear that such action might be brought against the United States directly, instead of against the officer making the alleged erroneous charge. Under the provision of § 380, Title 5 U.S.C.A., all postal revenues are to be paid into the Treasury of the United States upon collection, hence the comment in the Emery case, "As the United States has received and keeps the money, and would indemnify the collector if he had to pay * * * the least that can be said is that it would be adding a fifth wheel to

the coach to require a circuitous process to satisfy just claims," becomes very apt. Appellees' grievance was the denial of a privilege which they claimed was granted them by the statute, to send their matter as third-class mail; the denial was based on a regulation which they assert exceeded the authority granted the Postmaster General.

We consider the language in another decision significant, even though the judgment was adverse to the claimant. In Journal & Tribune Co. v. United States, 254 U.S. 581, 41 S.Ct. 202, 204, 65 L.Ed. 415, the Court affirmed the action of the Court of Claims, 53 Ct.Cl. 612, in dismissing a suit for a refund of postage paid by mistake when the sender intended to use the express instead of the mail to send its papers, but where it did not appear that the mistake was that of the Post Office. After considerable discussion of the question as to whether or not the amount in controversy was sufficient to confer jurisdiction upon the Supreme Court to entertain the appeal, under the provisions of the then applicable § 242 of the Judicial Code, but with no suggestion that the Court of Claims did not have jurisdiction over the original cause, the Court determined that it did have such jurisdiction and proceeded to pass upon the merits of the claim, agreeing with the Court of Claims that there was no legal basis for a recovery, stating, "The money was not paid under any such mistake as to render it inequitable for the United States to retain it." See, also, Dismuke v. United States, 297 U.S. 167, 56 S.Ct. 400, 80 L.Ed. 561.

■ In the light of these decisions, we conclude that the District Court was not in error in its conclusion that it had jurisdiction of the cause of action. We pass then to a consideration of the merits.

The statute defines the types of matter mailable in each of the four classes established therein. 39 U.S.C.A. §§ 221, 222, 224, 2.5, 240. "Mail matter of the third class shall include books, circulars, and other matter wholly in print· * * * merchandise * * * and all other mailable matter not included in the first or second class." 39 U.S.C.A. § 235. § 250 provides that, "The Postmaster General may prescribe, by regulation, the manner of wrapping and securing for the mails all packages of matter not charged with first-class postage, so that the contents of such packages may be easily ex-amined; and no package the contents of which can not be easily examined shall pass in the mails, or be delivered at a less rate than for matter of the first class."

■■ The refusal of the Postmaster to accord the cards third-class privileges was based on the fact that the sheet of "pull" slips was sealed in such a manner that the inner surface could not be easily examined without mutilating the portion bearing given names. At the same time he suggested a means by which the cards could be made up, with the sheets open at the top and on one side, permitting examination of the inner surface without mutilation, with directions to the agent or user that the slips were to be completely pasted upon receipt of the matter. We think there can be no doubt that the interior of the cards was not subject to examination, and that literally, it was within the authority of the Postmaster to refuse privileges for a class of mail matter which did not conform to the complete examination required. Ordinarily courts will not interfere with the exercise of an administrative officer's discretion,[1] and only in a clear case of gross abuse of discretion will they undertake to review a determination of such an officer. In Bates & Guild Co. v. Payne, 194 U.S. 106, 24 S.Ct. 595, 597, 48 L.Ed. 894, the Court stated the rule: "That where the decision of questions of fact is committed by Congress to the judgment and discretion of the head of a department, his decision thereon is conclusive; and that even upon mixed questions of law and fact, or of law alone, his action will carry with it a strong presumption of its correctness, and the courts will not ordinarily review it, although they may have the power, and will occasionally exercise the right of so doing. * * * Although a comparison of the exhibit with the statute may raise only a question of law, the action of the Postmaster General may have been, to a certain extent, guided by extraneous information obtained by him, so that the question involved would not be found merely a question of law, but a mixed question of law and fact. While, as already observed, the question is one of doubt, we think the decision of the Postmaster General, who is vested by Congress with the power to exercise his judgment and discretion in the matter, should be accepted as final." We think these principles fully cover

[1] Work v. United States ex rel. Rives, 267 U.S. 175, 45 S.Ct. 252, 69 L.Ed. 561; Transcontinental & Western Air v. Farley, 2 Cir., 71 F.2d 288.

the situation presented by the facts of the case at bar, and that, in their light, the action of the District Court in ordering the refund of the postage, the collection of which he held to have been in excess of the authority of the Postmaster General, was in error.

Judgment reversed, and cause remanded for further proceedings consistent with this opinion.

MINTON, Circuit Judge (dissenting).

If we had the right to act in this case, I would agree with the conclusion of the majority. I do not think a right of action within the jurisdiction of the District Court is stated. We do not come to the Tucker Act until we first have a right of action against the Government for the vindication of which the sovereign has given its consent to be sued. Section 300 of Title 39 U.S.C.A. gives no such right of action against the United States. It simply provides that whenever it is shown to the satisfaction of the Postmaster General that any postage, among other things, is collected in excess of the lawful rate, he may *in his discretion* authorize a refund. Congress did not provide for judicial review. On the contrary, it left the decision to the discretion of the Postmaster General. It is his discretion and not ours that has received the sanction of Congress. The Postmaster General has decided against the appellees. That exhausts their remedy. No resort to the courts is authorized. If we undertook to review the action of the Postmaster General, the statutory provision placing the decision in him at his discretion would be nullified, and the decision would be in our discretion.

The right to review the action of the Postmaster General under Section 300 was attempted in a recent case before the Court of Claims in Montgomery Ward, etc., v. United States, 94 Ct.Cl. 309, and denied by that court. In that case the court said:

"We see nothing in the statute that in the first instance creates the right to sue. The right of action, we think, exists only when the Postmaster General has been satisfied that the requirements of the statute have been met, and this, under the terms of the statute, depends entirely upon the discretion of the Postmaster General. * * *

"There is a special feature in the instant case not found in any of the cases cited, which is decisive in favor of the defendant. The statute upon which the claim is based provides for payment only when the Postmaster General in his *discretion* authorized it to be made. It is well settled that where a special remedy is provided by the statute creating a right, that special remedy is exclusive, and where the statutory benefit is allowed only in the discretion of an administrative officer, his decision is final and the courts will not review it. See Williamsport Wire Rope Co. v. United States, 277 U.S. 551 [48 S.Ct. 587, 72 L.Ed. 985]; John B. Kelly, Inc., v. United States 87 Ct.Cl. 271; Dismuke v. United States, 297 U.S. 167 [56 S.Ct. 400, 80 L.Ed. 561]."

This seems to me to be the proper construction of the statute, and for this reason I would reverse the judgment of the District Court.

On Petition for Rehearing.

In their petition for rehearing, appellees assert that this court limited its decision to "pull cards" or "pull slips" in one place in the opinion, and by so doing they maintain that we intended to award a recovery to them with respect to their "push cards," and they ask us to clarify the opinion in that respect. We had no intention to distinguish between the two types of cards, and we think that we did not. The opinion intended to, and we think it does apply to both "pull" and "push" cards.

The petition for rehearing is overruled.