**WESTWOOD PROMOTIONS, INC., Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

No. 87 C 8614.

United States District Court, N.D. Illinois, E.D.

May 19, 1989.

Donald A. Mackey, McBride, Baker & Coles, Chicago, Ill., for plaintiff.

U.S. Atty's Office, Chicago, Ill., William Clabault, Terry M. Kinney, Ass't U.S. Attys., for defendant.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff Westwood Promotions, Inc. (Westwood) brought this action against defendant United States Postal Service (U.S. P.S. or Postal Service) seeking a refund of $160,449.83 for postage paid for certain bulk class mailings. In its three-count complaint, Westwood alleges that the Postal Service (1) misclassified certain of Westwood's mailings, resulting in an overcharge; (2) arbitrarily and capriciously refused Westwood's claim for a refund, in violation of procedures stated in Section 143 of the Domestic Mail Manual (D.M.M.)[1]; and (3) was unjustly enriched by denying Westwood's refund claim. Defendant now moves to dismiss this complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted or, alternatively, moves for summary judgment pursuant to Fed.R. Civ.P. 56(b). For the reasons stated below, we grant defendant's motion to dismiss.

## FACTS

Plaintiff is engaged in advertising, promoting and selling records, tapes and cassettes of music, to consumers. Between July 1983 and June 1986 plaintiff was engaged in its business in Lombard, Illinois, and mailed packages—some of which weighed 16 ounces or less—at the Lombard Post Office. Until May 1986 defendant classified these mailings as regular fourth class mail, and Westwood paid the appropriate postage.[2] Defendant subsequently informed plaintiff that these mailings were eligible for the special fourth class rate provided Westwood pre-sorted its mailings to the three-number zip code corresponding to destination bulk mail centers. Plaintiff sorted the mailings and took advantage of this lower rate from May 1986 to June 1986.

In June 1986 Westwood moved to Colorado Springs, Colorado, and attempted to use the special fourth class bulk rate at the Colorado Springs Post Office. It was at this time that plaintiff first learned that mailings under 16 ounces qualified for lower third class bulk rates, with no significant changes in Westwood's pre-sorting requirements.[3]

Westwood contends that had it known about the third class mail costs during the period it mailed material from Lombard, it would have, and could have, complied with the pre-sort requirements in order to qualify for the lower rate. Plaintiff then filed a refund claim with the Lombard postmaster. Defendant contended that plaintiff knew about pre-sort options and did not pre-sort. The claim was denied. Plaintiff appealed

---

**1.** The provisions of the D.M.M. are incorporated by reference into 39 C.F.R. § 111.1.

**2.** The parties disagree on the question of who classified the mailings. For the purposes of this motion we take plaintiff's facts as true.

**3.** Prior to April 1986 bulk third class mailers were required to pre-sort by five-digit zip codes.

D.M.M. § 667.22 (Jan. 20, 1983), exh. 667(a) (Nov. 1, 1981). In April 1986 this requirement was changed so that mailers were required only to sort by the three-digit zip codes corresponding to Bulk Mail Centers. *See* 51 Fed.Reg. 12,-992, 12,999 (Apr. 17, 1986); D.M.M. § 667.22, exh. 667(a) (Dec. 20, 1987).

the denial to the Chicago Regional Rate and Classification Center and the claim was again denied. Westwood then filed this action.

## DISCUSSION

■ On a motion to dismiss for lack of subject matter jurisdiction, the party seeking to invoke this court's jurisdiction has the burden of establishing the jurisdictional requirements. *Kontos v. United States Department of Labor*, 826 F.2d 573, 576 (7th Cir.1987); *Marks v. Turnage*, 680 F.Supp. 1241, 1243 (N.D.Ill.1988). Plaintiff claims this court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1339, 39 U.S.C. § 409(a) and D.M.M. § 147.221. Defendant argues that these statutes do not provide a basis for jurisdiction by themselves, without an independent basis for finding a cause of action against the Postal Service.

### I. *Jurisdiction Under 28 U.S.C. §§ 1331, 1339 and 39 U.S.C. § 409(a).*

■ Westwood points to three cases where courts have found jurisdiction under similar circumstances. Defendant argues that the facts in these cases are distinguishable. Because of the relative lack of precedents on this issue we will review the relevant cases in detail.

In *Schreiber v. United States*, 129 F.2d 836 (7th Cir.1942), the plaintiffs sued for a refund of extra postage paid for first class mail when they were entitled to mail the material as third class mail. The plaintiffs had previously protested the classification and filed claims for refunds. The *Schreiber* plaintiffs relied on the Tucker Act, presently codified as 28 U.S.C. § 1346(a)(2), not the postal refund statute, as their jurisdictional basis. The appellate court found that the district court did have jurisdiction to consider a suit for refund for a non-tort claim. *Id.* at 837–39.

The dissent, on the other hand, would have denied jurisdiction based on the then refund statute, 39 U.S.C.A. § 300 (West 1928), which left the refund decision to the

discretion of the Postmaster General. *Id.* at 840 (Minton, J., dissenting).

The facts in the second case relied on by Westwood were similar. In *Christian Beacon v. United States*, 322 F.2d 512 (3d Cir.1963), the court found that a cause of action for refund was barred by the statute of limitations. However, without any analysis, the appellate court stated that they had "no doubt that ... the district court would have jurisdiction under either 28 U.S.C.A. § 1339 or 28 U.S.C.A. § 1346(a)(2)" (footnotes omitted). *Id.* at 513.

*Conservative Caucus, Inc. v. United States*, 228 Ct.Cl. 45, 650 F.2d 1206 (1981), the third case cited by plaintiffs, is more instructive because it was decided after the establishment of the United States Postal Service in 1970. In *Conservative Caucus* a holder of a special bulk third class permit sought a refund of over $400,000 because certain mailings which were not mailed at the appropriate post office were charged the higher regular third class rate. The plaintiff requested a refund and appealed the denial, as required by U.S.P.S. procedures, before filing suit. *Id.* 650 F.2d at 1207–08. The Court of Claims found that it had jurisdiction under the Tucker Act. *Id.* at 1209 & n. 1. At issue was the proper interpretation and application of § 134.54 of the Postal Service Manual (subsequently replaced by the D.M.M.) concerning requirements for mailing at the special third class bulk rate. *Id.* at 1209. Only after finding jurisdiction did the court consider the refund regulation, D.M.M. § 147.2. The court ruled that the Postal Service had "wide discretion" in granting refunds and that the U.S.P.S. decision was final because the decision was "not clearly wrong, nor contrary to law." *Id.* at 1210.

Defendant also cites three cases as holding that we have no jurisdiction to consider this case. In *Knight Newspapers, Inc. v. United States*, 395 F.2d 353 (6th Cir.1968), the plaintiff sought a refund based on an express contract. The court held that an action for a postal refund was founded on a

quasi-contract or a contract implied in law [4] and not actionable under the Tucker Act. The court also found that the postal refund statute, then codified at 39 U.S.C.A. § 4055 (West 1962), committed refunds to the Postmaster General's sole discretion. Consequently, the court found that the refund statute did not create a cause of action upon which the plaintiff could base jurisdiction. *Id.* at 357–58.

The holding in *Northwest Publications, Inc. v. United States,* 253 F.Supp. 828 (D.D.C.1966), is similar. There the plaintiff sought a refund for excess postage paid due to an error in computing the weight of its newspapers. The court interpreted this as an action based on a contract implied in law and found that there was no jurisdiction under the Tucker Act. *Id.* at 829. *Cf. Rider v. United States,* 7 Cl.Ct. 770, 774 (1985) (Claims Court has no jurisdiction over contracts implied in law), *aff'd without opinion,* 790 F.2d 91 (Fed.Cir.1986). The court also found no jurisdiction under 39 U.S.C. § 4055, holding that the postal refund statute leaves the questions of refunds to the discretion of the Postmaster General. *Northwest Publications,* 253 F.Supp. at 829–30.

Finally, in *Montgomery Ward & Co. v. United States,* 94 Ct.Cl. 309 (1941), the court similarly held that the then-existing refund statute, 39 U.S.C.A. § 300 (West 1928), was discretionary, and that the court did not have the jurisdiction to review the Postmaster General's denial of a refund. *Id.* at 312–13.

In all the cases cited by the parties where review was allowed, there was some additional basis other than 28 U.S.C. §§ 1331, 1339 or 39 U.S.C. § 409 to create a cause of action. In *Schreiber,* the court found jurisdiction based on a non-tort action under the Tucker Act. *Schreiber,* 129 F.2d at 838. In *Christian Beacon,* the

court also relied on the Tucker Act but never made clear its jurisdictional basis. The court gave no reasons for its conclusion of jurisdiction but simply cited to *Schreiber* and *Teal v. Felton,* 53 U.S. (12 How.) 284, 13 L.Ed. 990 (1851).[5] The court in *Conservative Caucus* found jurisdiction based on the application and interpretation of a section of the Postal Service Manual. Other cases involving the Postal Service also have relied on some additional basis specifying a cause of action. *See Peoples Gas Light & Coke Co. v. United States Postal Service,* 658 F.2d 1182, 1189 (7th Cir.1981) (violation of U.S.P.S. publication no. 191, § 3.14); *Rider,* 7 Cl.Ct. at 774 (breach of contract under Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.*); *Combined Communications Corp. v. United States Postal Service,* 686 F.Supp. 663, 666 (M.D.Tenn.1988) (violation of 39 U.S.C. § 3623); *Allied Coin Investment, Inc. v. United States Postal Service,* 673 F.Supp. 982, 984 (D.Minn.1987) (tort of negligent transmission under Federal Tort Claims Act (FTCA), 28 U.S.C. § 1346(b)).[6]

We believe the law in this circuit is clear. Neither 28 U.S.C. § 1339 nor 39 U.S.C. § 409(a) provides a cause of action to form a basis for jurisdiction. These statutes allow the Postal Service to sue or be sued, thus removing the barrier of sovereign immunity. However, they also require an independent basis for a cause of action. *Peoples Gas,* 658 F.2d at 1189. *See also Roman v. United States Postal Service,* 821 F.2d 382, 385 (7th Cir.1987) (39 U.S.C. § 1339 requires other substantive basis for jurisdiction). *But see Grasso v. United States Postal Service,* 438 F.Supp. 1231, 1234 (D.Conn.1977) (jurisdiction under 39 U.S.C. § 409(a) for non-tort claims of promissory estoppel and taking without compensation). Similarly, 28 U.S.C. § 1331 does not create a cause of action upon which to base jurisdiction. *DeVilbiss v. Small*

---

**4.** Some courts use the term quasi-contract and others use the term contract implied in law. We treat them as the same.

**5.** At issue in *Teal* was whether a state court had jurisdiction to consider an action in trover against the Post Office, or whether federal courts had exclusive jurisdiction over such ac-

tion. *See Teal,* 53 U.S. at 292. Thus *Teal* adds nothing to the analysis of the present case.

**6.** Although the court stated that it had jurisdiction under 28 U.S.C. §§ 1331, 1339 and 39 U.S.C. § 409(a), the court analyzed the case as a tort under the FTCA.

*Business Administration,* 661 F.2d 716, 718 (8th Cir.1981) (*per curiam*). Consequently, we agree with defendant that there must be an independent basis for jurisdiction other than the statutes relied on by plaintiff.

## II. *Is There a Cause of Action?*

As we discussed above, allegations of tortious conduct or breach of contract may provide a jurisdictional basis. Plaintiff may have implicitly stated such a basis for jurisdiction in the complaint. Consequently, we proceed to analyze each count for a jurisdictional basis.

### A. Tortious Conduct (Count I)

In count I plaintiff alleges that defendant misclassified Westwood's mail. It is not clear from the complaint whether or not plaintiff is suing based on a tort. We discuss possible non-tort actions in part II(C) *infra.*

■■■■ This court has jurisdiction to consider tort claims against the Postal Service under the FTCA. *See Loeffler v. Tisch,* 806 F.2d 817, 820 (8th Cir.1986) (*en banc*), *rev'd sub nom. on other grounds, Loeffler v. Frank,* — U.S. ——, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988); 39 U.S.C. § 409(a). Of course, the limitations of that Act would apply. *Allied Coin,* 673 F.Supp. at 986. Plaintiff has not argued jurisdiction under the FTCA and it has not shown facts granting this court jurisdiction. Because plaintiff bears the burden of establishing the jurisdictional requirements, we cannot at this time find jurisdiction on the basis of a tort action.

### B. Violation of D.M.M. § 147 (Count II)

■■ In this count Westwood claims that the Postal Service arbitrarily and capri-

ciously denied its refund claim in violation of D.M.M. § 147. Plaintiff argues that D.M.M. § 147.221 provides a cause of action. Westwood apparently relies on subsection (b), which reads:

Refund of 100% will be made:

\*　　\*　　\*　　\*　　\*　　\*

(b) for the excess where postage or fees have been paid in excess of lawful rate.

However, as defendant points out, D.M.M. § 147.22 concerns the refund of an allowable amount if a refund is justified under D.M.M. § 147.21. *Cf.* D.M.M. § 147.222 (circumstances where partial refund is made). Reading § 147.2 as a whole, we believe D.M.M. § 147.221, by itself, does not provide a cause of action. If any portion of § 147.2 could provide such an action, perhaps it is § 147.21.

D.M.M. § 147.211 states the standard for justifying refund:

When postage ... ha[s] been paid, and no service is rendered, or when the amount collected was in excess of the lawful rate, a refund may be made....

Courts that have considered statutory predecessors of this regulation have interpreted the statutes as permitting a refund at the sole discretion of the Postmaster General, thus finding no basis for jurisdiction in those statutes. *See Knight,* 395 F.2d at 356–57 (39 U.S.C. § 4055); *Northwest Publications,* 253 F.Supp. at 829–30 (39 U.S.C. § 4055); *Montgomery Ward,* 94 Ct.Cl. 312–13 (39 U.S.C. § 300); *see also Schreiber,* 129 F.2d at 840 (Minton, J., dissenting) (39 U.S.C. § 300). Through the years, however, the wording of the statutes, and now the regulation, has changed.[7]

Two reported cases discuss D.M.M. § 147.211, although not as a basis for jurisdiction. The Court of Claims has stated that the regulations grant the Postal Ser-

---

**7.** The first refund statute stated:

Whenever it shall be shown to the satisfaction of the Postmaster General that any postage is paid on any mail matter for which service is not rendered, or is collected in excess of the lawful rate, he may, in his discretion, authorize the postmaster at the office where paid to refund the proper amount out of the postal receipts in the possession of the postmaster.

39 U.S.C. § 300 (1934). Following recodification in 1960, the wording of the statute changed to:

The Postmaster General may refund out of postal receipts postage which he is satisfied has been—

(1) paid for service not rendered; or

(2) collected in excess of the lawful rate. 39 U.S.C. § 4055 (1964). The current regulation is stated *supra* in the text.

vice "wide discretion" as to whether and under what conditions refunds may be made. *Conservative Caucus*, 650 F.2d at 1210. More recently, the *Combined Communications* court noted that the regulation "merely permits," but does not require a refund by the Postal Service. *Combined Communications*, 686 F.Supp. at 671 n. 12. These cases would appear to support defendant's contention that D.M.M. § 147.211 does not provide a basis for jurisdiction.

Neither does the legislative history of refund statutes and regulations, scant as it is, imply § 147.211 should provide a cause of action against the Postal Service. Prior to the adoption of 39 U.S.C. § 300, the Postmaster General followed a discretionary practice of paying refunds out of receipts on hand. Apparently 39 U.S.C. § 300 was adopted to provide a statutory basis for the Postmaster General's existing actions following a ruling by the Comptroller of the Treasury prohibiting refunds absent an Act of Congress. *See* 58th Cong., 39 Cong.Rec. 3,726 (Mar. 1, 1905) (Statement of Sen. Penrose). *See also Knight*, 395 F.2d at 358; *Schreiber*, 129 F.2d at 838 (both citing Cong.Rec.). The only comments found on the recodification of § 300 to § 4055 are in the historical and revision note, which states that changes were made only in the phraseology. *See* S.Rep.No. 1763, 86th Cong., 2d Sess., *reprinted in* 1960 U.S.Code Cong. & Admin.News 863, 917. Prior to 1979 the Postal Service Manual contained a regulation, and this regulation was incorporated in the new Domestic Mail Manual in 1979. No comments appeared in the Federal Register at that time because comments were not published where sections were not significantly different from the Postal Service Manual. *See* 44 Fed.Reg. 39,742, 39,746 (July 6, 1979). The latest changes to the Domestic Mail Manual, which were in effect at the time of Westwood's mailings, involving § 147.2, added §§ 147.26 and 147.27 to specify procedures regulating postal refunds. *See* 46 Fed.Reg. 58,077, 58,078 (Nov. 30, 1981). Nowhere is there any

indication of changing the discretionary purpose of the original refund statute, 39 U.S.C. § 300.

Citing *Peoples Gas*, plaintiff also argues that we may review Postal Service decisions under common law review principles. Although *Peoples Gas* found jurisdiction to review alleged violations of Postal Service procurement regulations, it was the alleged violations of those regulations that provided a cause of action. *See Peoples Gas*, 658 F.2d at 1190–91. *See also Combined Communications*, 686 F.Supp. at 668–69 & n. 8 (violation of 39 U.S.C. § 3623 in promulgating D.M.M. § 425.226 alleged). Thus, absent a violation of an established regulation, common law review principles themselves do not provide a jurisdictional basis.

Thus, our conclusion is that we have no jurisdiction to hear count II. We agree with the courts that held that because the statute provided for refunds at the Postmaster General's discretion, it would be improper to find a cause of action under D.M.M. § 147. In this case there is no legal standard and thus no law to apply. *Cf. Peoples Gas*, 658 F.2d at 1190 (law to apply where regulation sets forth a standard). We have found nothing in the history of the statutes or the regulations that would change this result.

## C. Breach of Contract (Count III)

■ Plaintiff also alleges that defendant was unjustly enriched by denying Westwood's claim. Treating this as a claim for breach of contract, we must consider whether we have jurisdiction under the Tucker Act. Under that Act the Claims Court has exclusive jurisdiction for non-tort claims in excess of $10,000. *Amoco Production Co. v. Hodel*, 815 F.2d 352, 358–59 (5th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 2898, 101 L.Ed.2d 932 (1988); *Chicago Consortium, Inc. v. Brennan*, 599 F.2d 138, 141 (7th Cir.1979) (*per curiam*); 28 U.S.C. §§ 1346(a)(2), 1491(a). Plaintiff's refund claim, however, is for over $160,000. Consequently, this court has no jurisdiction to hear this claim under the Tucker Act.[8]

---

8. We do not wish to imply that the Claims Court has jurisdiction over this case or that count III

### D. Estoppel and Waiver of Sovereign Immunity

Plaintiff also claims that the actions of defendant give rise to some form of estoppel. This may or may not be true, but estoppel does not create subject matter jurisdiction. *See Montez v. South San Antonio Independent School District*, 817 F.2d 1124, 1126 (5th Cir.1987). Estoppel just forecloses a party under certain circumstances from asserting a defense or claim. *Portmann v. United States*, 674 F.2d 1155, 1158 (7th Cir.1982). Neither does the waiver of sovereign immunity create subject matter jurisdiction. *Roman*, 821 F.2d at 385.

### CONCLUSION

We grant defendant's motion to dismiss for lack of subject matter jurisdiction.

would state a claim in the Claims Court. It may not. *See United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 2968, 77 L.Ed.2d 580 (1983) (Claims Court has no jurisdiction over contracts implied in law); *Chavez v. United States*, 15 Cl.Ct. 353, 356–57 (1988) (same).