Williams, Judge,
delivered the opinion:
The plaintiff’s predecessor, between April 26, 1925, and July 15, 1925, deposited with the postmaster at Los An-geles, California, for delivery 42,132 pieces of printed matter containing 12 pages each, fastened together by wire staples, but not bound, and weighing less than two ounces, on which the postmaster charged and collected postage at the rate of one and one-half cents per piece.' The plaintiff contends the proper charge should have been one cent, the rate applicable to books weighing less than eight ounces.
The controversy hinges on the meaning of the word “ books ”as used in the act of February 28, 1925, 43 Stat. 1053, 1067:
“ THIRD-CLASS MATTER
“ Sec. 206. (a) Mail matter of the third class shall include books, circulars, and other matter wholly in print (except newspapers and other periodicals entered as second-class matter), proof sheets, corrected proof sheets, and manuscript copy accompanying same, merchandise (including farm and factory products), and all other mailable matter not included in the first or second class, or in the fourth class as defined in section 207.
“(b) The rate of postage thereon shall be 1 y2 cents for each two ounces or fraction thereof, up to and including eight ounces in weight, except that the rate of postage on boobs, catalogues, seeds, cuttings, bulbs, roots, scions, and plants, not exceeding eight ounces in weight, shall be 1 cent for each two ounces or fraction thereof.”
“ EOTXRTH-CLASS MATTER
“ Sec. 207. (a) Mail matter of the fourth class shall weigh in excess of eight ounces, and shall include books, * * *, and all other mailable matter not included in the first or second class, or in the third class as defined in section 206.
“ (b) That on fourth-class matter the rate of postage shall be by the pound * *
*685 The word “ books ” is not defined. The act merely provides (a) that books weighing eight ounces or less shall be of the third class and bear postage rate of one cent for each two ounces or fraction thereof, and (b) that books weighing in excess of eight ounces shall be of the fourth class and take the parcel-post rate by the pound.
The word “ books ” not being defined in the statute, the proper and effective administration of the law required the Postmaster General, by regulations, to specify what constitutes a book, as distinguished from other printed matter included in section 206 (a), they carrying under section 206 (b) a different rate of postage. Accordingly, on April 10, 1925, after the passage of the act, the Postmaster General placed the administrative interpretation on the word “books,” holding that in order that printed matter may come within the contemplation of the term it shall consist of 24 or more pages. This ruling was announced in Postal Bulletin of April 10, 1925, effective April 15, 1925, as follows.:
“ 28. Third-class' matter embraces circulars, books (including catalogues) having, including the covers, 24 pages or more, and other printed matter on paper not having the nature of an actual personal correspondence * * * up to and including 8 ounces.”
“ 32. The rate of postage on third-class matter is l1/^ cents for each 2 ounces or fraction thereof, up to and including 8 ounces, except that the rate on books (including cata-logues) having 24 pages or more, seeds, cuttings, bulbs, roots, scions, and plants, not exceeding 8 ounces in weight, is 1 cent for each two ounces or fraction thereof, on each individually addressed piece or package. The 1-cent rate does not apply to blank books or to those mainly blank (sec* 435, Postal Laws and Regulations).”
This definition of the term “ books ” as used in the postal laws was not new. The Postmaster General more than 11 years prior to the passage of the act of February 28, 1925, had fixed 24 pages of printed matter as a line of demarkation distinguishing a book from a pamphlet or other miscellaneous printed matter, and the Post Office Department had consistently adhered to that definition in applying rates-of postage to books. The Postal Bulletin of April 10,1925, *686 was, therefore, but a reaffirmation of existing regulations, and continued in effect departmental usages and practices of long standing. Books were placed in the fourth class in 1913, at which time it was held that for postal classification a book was a bound printed matter of 24 pages or more. This included catalogues, a catalogue of 24 or more pages being considered a book under such classification. This classification of books and catalogues continued in effect, and was in effect April 15, 1925, when the act of February 28, 1925, became effective.
The Postmaster General had authority under R. S. 161, TJ. S. C., title 5, sec. 22, to prescribe regulations, not inconsistent with law, for the government of his department, and it was his duty under section 369, title 5, TJ. S. C., to superintend generally the business of the department and execute all laws relative to the postal service.
It is well settled, that a regulation prescribed by the head of a department, when not inconsistent with law, has the force and effect of law. Caha v. Umted States, 152 U. S. 211; Boske v. Comingore, 177 U. S. 459; that the contemporaneous construction of a statute by those charged with its execution, especially when such construction has long prevailed, is entitled to great weight, and should not be disregarded or overturned except for cogent reasons, and unless it be clear that such construction is erroneous. United States v. Johnston, 124 U. S. 236; Logan v. Davis, 233 U. S. 613; Boston & Maine Railroad v. Hooker, 233 U. S. 97; United States v. Mason, 227 U. S. 486; and that where an act of Congress has by actual decision, or by a continued usage and practice, received a construction at the proper department, and that construction has been acted on for a succession of years, it must be a strong and palpable cause of error and injustice that would justify a change in the interpretation to be given it. Luckenbach S. S. Co. v. United States, 280 U. S. 173; United States v. Union Pacific Railway Company, 37 Fed. 551; affirmed, 148 U. S. 562; United States v. North Carolina State Bank, 6 Pet. 29; United States v. Moore, 95 U. S. 760; Robertson v. Downing, 127 U. S. 607.
We think the interpretation placed on the word “ books ” in the official bulletin of April 10, 1925, is a reasonable con *687 struction of the statute. It not only accords with the popular and ordinary signification of the word as commonly used, but clearly comes within its primary dictionary meaning—
“A number of sheets of paper bound or stitched together, whether blank, written, or printed, used for any purpose. Specifically: (1) A printed and bound volume of some bulk, as distinguished from a pamphlet.” (Standard Dictionary.)
In any event it can not be said that this construction is so clearly erroneous as to justify the court in overturning it. This is particularly true when it is considered that Congress, in the act of February 28, 1925, did not indicate its disapproval of the department’s interpretation of the word “ books ” — printed matter having, including covers, 24 pages or more — although that interpretation had, at the time, been consistently acted upon and followed by the department for more than eleven years.
The plaintiff is not entitled to recover. It is ordered that the petition be dismissed.
Whaley, Judge; LittletoN, Judge); GreeN, Judge; and Booth, Chief Justice, concur.