**CHRISTIAN BEACON** (a non-profit corporation), Appellant,

v.

**UNITED STATES** of America.

No. 14108.

United States Court of Appeals Third Circuit.

Argued Feb. 20, 1963.

Decided Sept. 12, 1963.

Lloyd A. Good, Jr., Philadelphia, Pa. (Roper & Caldwell, Wesley H. Caldwell, Philadelphia, Pa., on the brief), for appellant.

Herbert S. Jacobs, Asst. U. S. Atty., Newark, N. J. (David M. Satz, Jr., U. S. Atty., Newark, N. J., on the brief), for appellee the United States.

Before McLAUGHLIN and GANEY, Circuit Judges, and COHEN, District Judge.

GANEY, Circuit Judge.

Appellant, Christian Beacon ("Beacon"), brought an action against the United States, to recover an amount which the Post Office Department required it to pay for postage, allegedly in excess of the special second-class rate, on second-class matter, sent through the mails, during the six years immediately preceding the filing of the complaint.

Beacon's complaint, filed December 8, 1961, avers as follows: At all times pertinent to this case, Beacon was organized and existing as a non-profit corporation, under the laws of New Jersey, and was exempt from paying income tax, under the applicable provisions of the Revenue Code, as a corporation organized exclusively for religious and charitable purposes, and that none of its net income inured to the benefit of any private stockholder or individual. During the same time it published a weekly newspaper called the "Christian Beacon", which has been entered as a second-class matter at the Post Office and mailed to subscribers from a post office in Camden, New Jersey.

Further, that on or about July 1, 1949, through its authorized agent, it made application to the Postmaster General pursuant to the Act of February 28, 1925, c. 368, § 202, 43 Stat. 1066, for a special second-class mailing classification, and in it, submitted satisfactory evidence that none of its net income inured to the benefit of any private stockholder or individual; that subsequent to July 1, 1949, the Postmaster arbitrarily and without authority or cause refused to grant to Beacon the special second-class mailing classification; that on March 10, 1961, the Post Office Department notified Beacon that it was entitled to mail its publication at the special rate; that from on or about July 1, 1949, to on or about March 10, 1961, Beacon paid the regular rate for second-class mail, and the total amount paid by it for postage during the past six years exceeded the special rate by $3,318.41; that on March 24, 1961, it requested a refund of that amount under the Act of March 3, 1905, c. 1480, § 2, 33 Stat. 1091 *, but on or about April 17, 1961, the Post Office Department arbitrarily and capriciously refused the request, and demanded judgment thereon.

In its answer raising the defense of the statute of limitations, the United States admits that Beacon filed an application in 1949 for the special second-class rate and that it filed a request for refund, but denies that satisfactory evidence was presented with Beacon's application for the right to use the special rate and that its request for refund was arbitrarily and capriciously refused. Thereafter, without a hearing or the filing of supporting affidavits, the United States filed a motion for summary judgment. The district court's order of May 25, 1962, disposing of the motion, states: "The court determining that it was without jurisdiction because of the sovereignty of the United States of America, finds that defendant is entitled to a summary judgment as a matter of law." From this order Beacon appealed to this Court.

First, the United States contends that the district court has no jurisdiction at any time over an action against the United States for a refund of allegedly excessive postage paid. We have no doubt that if a pary files a timely action for such a refund, the district court would have jurisdiction under either 28 U.S.C.A. § 1339 [1] or 28 U.S.C.A. § 1346 (a) (2) [2]. Schreiber v. United States, 129 F.2d 836, 141 A.L.R. 1394 (7 Cir.

* See 39 U.S.C.A. § 4055.

1. This section states: "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to the postal service."

2. This subsection provides: "(a) The district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

* * * * * * *

1942). Also see Teal v. Felton, 53 U.S. (12 How.) 284, 13 L.Ed. 990 (1851).

Secondly, the United States maintains that the action for a refund is barred by 28 U.S.C.A. § 2401(a). In pertinent part this section provides: "Every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues." This section may not be waived by the United States, and where it appears to the court that the time for bringing the action has run, the action must be dismissed. Finn v. United States, 123 U.S. 227, 8 S.Ct. 82, 31 L.Ed. 128 (1887); Werner v. United States, 10 F.R.D. 245, aff'd 188 F.2d 266 (C.A.9, 1952).

The Postmaster General denied Beacon's application for the special rate on August 15, 1949, and appellant's counsel was notified to this effect on August 18, 1949.

The theory of Beacon's case is that from the time it submitted what it deemed satisfactory evidence to the Postmaster General in July of 1949, pursuant to 39 U.S.C.A. § 283(a) (3) of the Act of February 28, 1925, which was in effect at the time, until March 10, 1961, when its second application was accepted, it was entitled to use the special postal rate for second-class matter. Hence it argues that its right of action for a refund of excess postage could not accrue until such postage was paid and that the statute of limitations runs from the date of each payment. In support of its theory Beacon argues that by virtue of the mandate of § 283(a) (3) of the Act of February 28, 1925, itself, from the time a publisher of religious periodicals furnishes satisfactory evidence to the Postmaster General that none of the net income of the publisher inures to the benefit of any private individual, it is entitled to use the special rate independent of any agency action. That is, the Postmaster General is given no discretion to deny or grant the special rate.

It is submitted that where Congress has imposed upon an administrative agency, the duty of deciding an applicant's entitlement to a right or privilege granted by a statute or regulation promulgated pursuant to statute, a claim does not accrue until that agency has acted or declines to act in the application. See Friedman v. United States, 310 F.2d 381 (Ct.Cl.1963). Although that case was decided under 28 U.S.C.A. § 2501, regarding the six-year limitation for filing suit in the Court of Claims, in pertinent part that section is almost identical with 28 U.S.C.A. § 2401(a) (1). Did Congress impose upon the Postmaster General the duty of deciding an applicant's entitlement to use special postage rates under former § 202(a) (3) of the Act of February 28, 1925, 43 Stat. 1066? This section provided:

> "(a) In the case of publications entered as second-class matter * * * when sent by the publisher thereof from the post office of publication or other post office * * *.
>
> * * * * * *
>
> "(3) The rate of postage on newspapers or periodicals maintained by and in the interest of religious, educational * * * organizations or associations, not organized for profit and none of the net income of which inures to the benefit of any private stockholder or individual, shall be 1½ cents per pound or fraction thereof, *and the publisher of any such newspaper or periodical, before being entitled to such rate, shall furnish to the Postmaster General, at such times and under such conditions as the Postmaster General may prescribe, satisfactory evidence* that none of the net income of such organization or association inures to

"(2) Any other civil action or claim against the United States, not exceeding $10,000 in amount, founded either upon the Constitution, or any Act of Congress, or any regulation or an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

the benefit of any private stockholder or individual.[3] (Italics ours)

While the section did not expressly impose such a duty upon the Postmaster General, we think it did by implication. Beacon concedes that it would not have been entitled to use the special rate prior to its filing the application with the Postmaster General. We do not believe that Congress intended that a publisher would be entitled to the special rate merely by the filing of an application. The section provided that before a publisher is entitled to use the special rate, it shall furnish satisfactory evidence of its entitlement to do so to the Postmaster General at such times and under such conditions as he may prescribe. Obviously someone must have been required to determine whether the evidence furnished was satisfactory and met the applicable statutes and regulations. We think that Congress meant that someone to be the Postmaster General or his designee. He has been of this view since December 30, 1948, at least.[4] Moreover the regulations provided adequate protection for a publisher pending consideration of his application by the Postmaster General.[5] The regulations were promulgated by authority of former R.S. § 396, as amended by the Act of June 10, 1921, c. 18, § 304, 42 Stat. 24. Also see 39 U.S.C.A. § 501(1).[6] The regulations, when they do not exceed statutory authority, have the force of law. See Bittleston Collection Agency v. United States, 75 Ct.Cl. 681 (1932). It has been the practice under former § 14 of the Act of March 3, 1829, 20 Stat. 359, to require a publisher to file an application and have it approved by the Postmaster General before a publication could be admitted to second-class mail. This practice was not disapproved by the Supreme Court of the United States in Milwaukee Publication Co. v. Burleson, 255 U.S. 407, 410, 415, 41 S.Ct. 352, 65 L.Ed. 704 (1921). While in the 1960 codifica-

3. Some of the provisions of this section may now be found in 39 U.S.C.A. § 4359.

4. Section 34.40(d) (2) of the Regulations of the Postal Service, 13 F.R. 8,8-- (December 30, 1948), 39 C.F.R. (1949) § 34.-40(d) (2), set forth: "(2) *Mailing at special rate to be accepted only when authorized.* No publication shall be accepted for mailing at the special postage rate * * * until the publisher has furnished the evidence prescribed * * * and the postmaster has been authorized by the Third Assistant Postmaster General to accept the publication at such postage rate. The publisher shall submit such evidence to the postmaster, who shall forward it to the Third Assistant Postmaster General, Division of Newspaper and Periodical Mail. * * *"

5. Section 34.40(d) (2) went on to provide: "Pending consideration by the department of the evidence submitted, the publication may, if already entered as second-class matter, be accepted under deposits of money to cover postage at the rates set forth in paragraph (a) of this section, such deposits to be treated and disposed of in the manner prescribed in § 34.30."

Section 34.30, 13 F.R. 8,8-- (1948), 39 C.F.R. (1949) § 34.30, of the Regulations provided: "*Conditional acceptance as second-class matter.* When an application for second-class entry has been filed * * * the postmaster shall issue to the publisher * * * a permit conditionally accepting the publication for mailing in the manner in which second-class matter is mailed * * * and require a deposit of money sufficient to cover postage at the regular * * * rates * * * computed on each separately addressed copy or package of unaddressed copies offered for mailing pending consideration of the application. * * * If the publication is admitted as second-class matter, the excess of the deposits over the second-class rates of postage shall be refunded. If postage is prepaid on copies by stamps affixed or in money under the permit system, or if copies are mailed at the bulk third-class rate * * * while the application is pending, no refund of any portion of the postage so prepaid shall be made when admission of the publication as second-class matter is authorized. If the publication is not admitted, the entire deposit shall be converted into postage stamps. * * * The stamps so used shall be accounted for as sold."

6. This subsection provides: "In addition to his other duties the Postmaster General shall—(1) prescribe rules and regulations that he deems necessary to accomplish the object of this title."

tion of the postal laws,[7] Congress did not expressly state that the Postmaster has the authority to deny an application for the entry of a publication as a second-class matter if it were not entitled to be so classified, 39 U.S.C.A. § 4352(a), the Postmaster General is still of the view that he has the authority,[8] and we agree. Beacon has not cited a case, nor have we been able to find one, in which the Postmaster General's authority to rule on an application for second-class or special rates has been successfully challenged. It should be noted that in the case of Sunshine Publishing Co. v. Summerfield, 184 F.Supp. 767 (D.C.D.C.1960), although the court held that the Postmaster General had exceeded his authority in denying the publisher's application for second-class mailing rights, it did not say the Postmaster General did not have the authority in the first instance to rule on the application. If he had no such authority, it would have been unnecessary for the court to hold that he exceeded his authority. To the same effect are Jeffries v. Olesen, D.C., 121 F.Supp. 463, 474, and Federal Communications Commission v. American Broadcasting Co., 347 U.S. 284, 296, 74 S.Ct. 593, 98 L.Ed. 699.

■ At the time appellant filed its first application in July of 1949, the Administrative Procedure Act of June 11, 1946, as amended, 5 U.S.C.A. §§ 1001, 1011, was in effect. Proceedings before the Post Office Department are subject to that Act. Standard v. Olesen, 74 S. Ct. 768 (1954); Cadillac Publishing Co. v. Summerfield, 97 U.S.App.D.C. 14, 227 F.2d 29 (1955), cert. den. 350 U.S. 901, 76 S.Ct. 179, 100 L.Ed. 791. Hence, at the time its application was denied on August 15, 1949, Beacon could have brought a civil action in the appropriate district court to review the ruling of the Postmaster General. Its present civil action to have that decision reviewed in the district court is barred by 28 U.S. C.A. § 2401(a).

As we have pointed out the court had jurisdiction to hear and determine the cause of action, but the same is barred by the statute of limitations and, accordingly, the order of the district court will be affirmed.

---

7. In a helpful explanation on page V of Title 39 U.S.C.A., the publishers state: "Despite changes that were made in text, however, the revision *is a reorganization and restatement* of existing laws rather than a revision of substance. As stated in Senate Report No. 1763 on H.R. 2339: 'The object of the new title is to restate existing law, not to make new law. Consistently with the general plan of the United States Code, the pertinent provisions of law have been reworded and rearranged, subject to every precaution against making changes in substance or disturbing existing rights, privileges, duties, or functions.'"

8. See § 22.3(b, f) of the Regulations of the Postal Service, 26 F.R. 11, 513 (Dec. 6, 1961), 39 C.F.R. (1962) § 22.3(b, f).